

FILED

Aug 07 2015, 9:30 am

CLERK
of the supreme court,
court of appeals and
tax court

| | |
|---|---|
| **ATTORNEY FOR APPELLANT** | **ATTORNEYS FOR APPELLEE** |
| Ryan W. Tanselle | Gregory F. Zoeller |
| Capper Tulley & Reimondo | Attorney General of Indiana |
| Brownsburg, Indiana | |
| | Katherine Modesitt Cooper |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Newland McElfresh, | August 7, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 32A01-1411-CR-514 |
| v. | Appeal from the Hendricks Superior Court |
| State of Indiana, | The Honorable Karen M. Love, Judge |
| *Appellee-Plaintiff.* | Cause No. 32D03-1305-FD-487 |

**Baker, Judge.**

[1] Newland McElfresh appeals his convictions for Class D Felony Attempted Obstruction of Justice[1] and Class A Misdemeanor Invasion of Privacy,[2] arguing that there is insufficient evidence to support the convictions and that the trial court erred in sentencing him. We find insufficient evidence supporting the attempted obstruction of justice conviction and reverse that conviction. We find insufficient evidence supporting the invasion of privacy conviction and reverse, but find sufficient evidence supporting the lesser-included offense of attempted invasion of privacy. We therefore remand to the trial court with directions to enter judgment against McElfresh on one count of attempted invasion of privacy and to sentence him accordingly.

## Facts

[2] On November 11, 2012, the State charged McElfresh with twelve counts of sexual offenses against three children, including T.W., in Cause No. 32D03-1211-FC-144 ("FC-144"). Pending a trial in that case, McElfresh signed two no-contact orders barring him from having any contact with the alleged victims. In April 2013, McElfresh pleaded guilty to three counts of child molesting involving T.W. and the two other victims.

---

[1] Ind. Code § 35-44.1-2-2; Ind. Code § 35-41-5-1.

[2] Ind. Code § 35-46-1-15.1.

[3] On May 3, 2013, after entering a plea agreement with the State but prior to his guilty plea hearing and sentencing, McElfresh wrote a four-page letter to T.W.'s mother stating in relevant part as follows:

> I would like for you to ask [T.W.] about the whole incident. Why? Because it never happened!!! I never touched [T.W., K., or A.]!! I want to know why they said that happened, and how their statements were exactly the same. I know you will be able to get the truth out of [T.W.]
>
> For something that NEVER happened, I want to know how they stated in their deposition[3] something word for word as to what happened. I know they talked to one another before they gave their depositions. But, I also know that [K. and T.W.] are not smart enough to have thought of this by themselves. Someone told them what to say! . . . They were coached as [sic] what to say, and I know if anyone could find out the truth, it would be you!
>
> You don't have to reply and tell me what you find out, and in truth you don't even have to ask [T.W.], that would be up to you. But, if I was you, I would really like to know the truth. . . . I will be honest with you. I really wanted to take this to trial. I know that I did not live in the house at the time of this allegation, and if I could have gotten either [T.W. or K.] to admit it never happened, they would have been charged with a "D" felony of "False Informing." They would have been charged with a felony for it. More than likely they would have been put on probation only, but they would have gotten themselves in serious trouble. I am pretty sure my attorney would have made one of the girls tell the truth. But, I told him I was guilty of other things and I really

---

[3] While McElfresh refers to T.W.'s "deposition," there is nothing in the record to indicate whether she gave a deposition or merely gave a statement to police in the course of the child molest investigation.

didn't want to go after the girls, I just wanted to find out who told them that. To me it is just amazing that I did things on the 31st of August. [A.] stated she was with [T.W.] when I did things with [T.W.], but she said they were on the 31st. To me, that is another reason I believe the girls all talked, and that was something else my attorney wanted to go after the girls with Conspiracy. That is another charge. They all would have had talked to each other about different instances she said they happened on the 31st of August. . . .

I would rather you not talk to the Prosecutor about this. I would hope that [T.W.] would tell you the truth, that [K.] told her what to say. . . .

State's Ex. 5.

[4] After receiving the letter, T.W.'s mother, A.W., contacted the Hendricks County Prosecutor's Office and Avon Police Detective Brian Nugent. And on May 9, 2013, the State charged McElfresh with obstruction of justice, a Class D felony, and invasion of privacy, as a Class A misdemeanor. On July 16, the State moved to dismiss the obstruction of justice count and to add a new count of attempted obstruction of justice, a Class D felony, which the trial court granted. Following a bench trial, the trial court found McElfresh guilty as charged, entered judgment of conviction, and sentenced him to an aggregate term of 600 days at the Department of Correction. McElfresh now appeals.

# Discussion and Decision

[5] McElfresh contends that the State presented insufficient evidence to support his convictions. Our standard of review for sufficiency of the evidence claims is well settled:

> In reviewing the sufficiency of the evidence, we examine only the probative evidence and reasonable inferences that support the verdict. We do not assess witness credibility, nor do we reweigh the evidence to determine if it was sufficient to support a conviction. Under our appellate system, those roles are reserved for the finder of fact. Instead, we consider only the evidence most favorable to the trial court ruling and affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.

*Pillow v. State*, 986 N.E.2d 343, 344 (Ind. Ct. App. 2013) (citations omitted) (internal quotation marks omitted).

## I. Attempted Obstruction of Justice

[6] To convict McElfresh of attempted obstruction of justice, the State was required to prove beyond a reasonable doubt that McElfresh took a substantial step toward committing obstruction of justice, that is, knowingly or intentionally inducing, by threat or coercion, T.W. to withhold or unreasonably delay in producing any testimony. Ind. Code §§ 35-41-5-1, 35-44.1-2-2(a)(1)(A).

[7] At trial, the State presented evidence that McElfresh mailed the May 3 letter to A.W. regarding her daughter T.W., a witness in the pending criminal proceeding against him. The State argued that the letter was an effort to

convince T.W. to change or withhold her testimony against him by threatening prosecution against her for false informing and/or conspiracy. We note that the trial court had not yet accepted McElfresh's plea agreement at the time he wrote the letter. Thus, there was still a possibility that he would face a trial and T.W. would testify against him.

[8] In McElfresh's letter, he accused T.W. of lying, contended that K. and T.W were coached, that K. told T.W "what to say," and that the girls conspired to give false testimony. State's Ex. 5. He contended that at trial his attorney "would have made one of the girls tell the truth," in which case, according to McElfresh, the girls would have been charged with false informing. *Id.* And McElfresh stated that his attorney "wanted to go after the girls with Conspiracy. That is another charge." *Id.* He contended that if T.W. will tell the truth now there would be no consequences and that she would not face "serious trouble." *Id.* On the other hand, if she continued to lie and his case were to be tried, her lies would be exposed and she would run the risk of criminal liability. Finally, he implied that if she did not recant her statement to law enforcement and tell "the truth" as he sees it, it would still be possible to take the case to trial, in which event T.W. would suffer legal consequences for having made false statements. *Id.*

[9] In other words, McElfresh essentially told T.W.'s mother that if T.W. intended to lie under oath, she would face legal consequences for the dishonesty. That is simply the truth. We cannot believe that in the State of Indiana it can constitute a crime to make a true statement, even if the subject matter of the

true statement involves the future testimony of a witness in a criminal proceeding. There are certainly circumstances in which this crime is committed when an individual writes a letter to someone with instructions to pass threats or coercive statements onto a third party. But those circumstances are not present in this case. We find that there is insufficient evidence supporting the attempted obstruction of justice conviction, and reverse that conviction.

## II. Invasion of Privacy

To convict McElfresh of invasion of privacy as a Class A misdemeanor, the State was required to prove beyond a reasonable doubt that McElfresh knowingly or intentionally violated a no contact order. I.C. § 35-46-1-15.1(5). McElfresh contends that, because the no contact order only applied to any contact with T.W., his letter to A.W. did not constitute a violation of that order.[4]

But the State contends that McElfresh's letter constituted an attempt to indirectly contact T.W., which is sufficient to support his conviction. In *C.W.W. v. State*, 688 N.E.2d 224, 226 (Ind. Ct. App. 1997), this Court noted that "contact" may include communication that is "either direct or indirect and is not limited by the means in which it is made known to another person."

---

[4] McElfresh contends that the letter did not ask A.W. to contact T.W. We disagree, inasmuch as it begins, "I would like for you to ask [T.W.] about the whole incident." State's Ex. 5.

Therefore, the mere fact that McElfresh's attempted communication with T.W. was indirect—via a third party—does not vitiate the conviction.

[12] Our inquiry does not end there, however, given that the contact between McElfresh and T.W. was incomplete. In *Huber v. State*, this Court considered a case in which there was an order of protection preventing Huber from contacting his wife, Julie. 805 N.E.2d 887 (Ind. Ct. App. 2004). Huber reached out to a domestic violence advocate and asked her to contact Julie on his behalf. The domestic violence advocate refused, and no contact was made. The State charged Huber with class B misdemeanor invasion of privacy, and after he was convicted, he appealed. This Court reversed the conviction, finding that while indirect communication can support an invasion of privacy conviction, it must be a *completed* communication:

> . . . [W]e find that the State failed to carry its burden on the material element of Huber violating a Protective Order by contacting Julie, either directly or indirectly. [The advocate] specifically told Huber that she could not convey the message; therefore, Huber's attempt to contact Julie indirectly through [the advocate] was incomplete. Accordingly, we must reverse[.]

[13] *Id.* at 892.

[14] In this case, likewise, while McElfresh may have made an attempt at indirect communication with T.W., the contact was incomplete. There is no evidence in the record that A.W. ever actually spoke to T.W. on behalf of McElfresh. Therefore, we find insufficient evidence supporting the class A misdemeanor invasion of privacy conviction.

[15]     When a conviction is reversed because of insufficient evidence, we may remand to the trial court with instructions to enter a judgment of conviction on a lesser-included offense if the evidence is sufficient to support the lesser offense. *Chatham v. State*, 845 N.E.2d 203, 208 (Ind. Ct. App. 2006). Attempted invasion of privacy is an inherently lesser-included offense of invasion of privacy. We find that McElfresh's conduct in this case—writing a letter to T.W.'s mother with a request to communicate with T.W. on his behalf—constituted a substantial step towards committing the crime of class A misdemeanor invasion of privacy. Accordingly, we reverse McElfresh's invasion of privacy conviction and remand with instructions to enter judgment for attempted invasion of privacy as a class A misdemeanor.

[16]     Given that we have reversed both of McElfresh's convictions and remand with instructions for entry of judgment on a lesser-included offense, we need not address his sentencing arguments. Instead, we instruct the trial court to sentence McElfresh on the class A misdemeanor attempted invasion of privacy conviction.

[17]     The judgment of the trial court is reversed and remanded with instructions to enter judgment for class A misdemeanor attempted invasion of privacy and to resentence McElfresh accordingly.


Najam, J., and Friedlander, J., concur.