ATTORNEYS FOR APPELLANT
Ryan W. Tanselle
Capper Tulley & Reimondo
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana



FILED
Mar 03 2016, 1:17 pm
CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 32S01-1511-CR-00667

NEWLAND MCELFRESH,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Hendricks Superior Court, No. 32D03-1305-FD-00487
The Honorable Karen Love, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 32A01-1411-CR-00514

**March 3, 2016**

**David, Justice.**

While Newland McElfresh was in jail awaiting his guilty plea hearing, he wrote an intimidating and coercive letter to the mother of the child victim who was the subject of the child molestation charges McElfresh was intending to plead guilty to. The letter and the surrounding circumstances provided sufficient evidence to support a conviction for attempted obstruction of

justice. A reasonable trier of fact could have concluded that McElfresh's intent in sending the letter was an attempt to influence the child into changing her prior allegations against him before the court accepted his guilty plea. Regardless of whether some of the statements within the letter were true, true statements may still be coercive and sufficient to support an obstruction of justice conviction. We also hold that the trial court should have considered McElfresh's participation in various programs while incarcerated as a mitigating factor, but any error was harmless. As such, McElfresh's conviction for attempted obstruction of justice and sentence are affirmed.

## Facts and Procedural History

In November 2011, Newland McElfresh was charged with twelve counts of various sex offenses, including: child molesting, performing sexual conduct in the presence of a minor, vicarious sexual gratification, and attempted child solicitation. These charges arose from allegations made by three young girls, A.S., K.S., and T.W., each of whom was under the age of fourteen at the time the alleged incidents occurred. At the time of his arrest, McElfresh was served with a no-contact order in relation to each of the child victims. McElfresh was advised that he was not to have any direct or indirect contact with the victims.

On April 24, 2013, McElfresh filed a plea agreement, in which he agreed to plead guilty to three counts of Class C Felony Child Molesting. On May 1st, the trial court set McElfresh's plea hearing for June 3rd.[1] Before the plea hearing, on May 3rd, McElfresh wrote a letter to A.W., T.W.'s mother, from jail. Prior to this incident, A.W. and McElfresh had known one another for several years, and the two had been neighbors since 2002. The letter spanned four pages, and began with McElfresh claiming that he was "embarrassed and ashamed of what [he had] done,"

---

[1] The hearing was subsequently moved and held on May 22nd.

and he "accept[ed] full responsibility for [his] actions and blame[d] no one but [himself]." (Exhib. 5, at 1.)  However, McElfresh then attempted to explain how he could not be guilty of the child molesting allegations.  He stated, "I would like for you to ask [T.W.] about the whole incident. Why? Because it never happened!!! I never touched [T.W., K.S., or A.S.]!! I want to know why they said that happened. . . . I know you will be able to get the truth out of [T.W.]." (Id. at 2.) McElfresh believed "[s]omeone told them what to say!" and "[t]hey were coached on what to say, and I know if anyone could find out the truth, it would be you!"  (Id.)

As the letter went on, McElfresh explained "[y]ou don't have to reply and tell me what you find out, and in truth you don't even have to ask [T.W.], that would be up to you. But, if I was you, I would really like to know the truth."  (Id.)  But then, he stated he had wanted to go to trial, and "[i]f [he] had gotten either [T.W.] or [K.S.] to admit it never happened, they would have been charged with a 'D' felony of 'False Informing.'  They would have been charged with a felony for it. More than likely they would have been put on probation only, but they would have gotten themselves into serious trouble." (Id. at 3.)  In addition, McElfresh pointed out that the girls could also have been exposed to additional criminal charges, such as conspiracy.  As the letter concluded, McElfresh asked that A.W. "not talk to the Prosecutor about this." (Id. at 4.)

After receiving the letter, A.W. immediately contacted the prosecutor, and a couple of days later, she also contacted Detective Brian Nugent, who had been the investigating detective on the case.  As a result of this letter, McElfresh was charged with Count I, Class D Felony Obstruction of Justice[2] and Count II, Class A Misdemeanor Invasion of Privacy.[3]  Count I was subsequently

---

[2] Ind. Code § 35-44.1-2-2(a)(1)(B) (Supp. 2013).

[3] Ind. Code § 35-46-1-15.1(2) (Supp. 2013).

dismissed, and Count III, Class D Felony Attempted Obstruction of Justice,[4] was added. McElfresh waived his right to a jury trial, and a bench trial proceeded. After presentation of the evidence, the trial court found McElfresh guilty on both counts and sentenced him to an aggregate term of 600 days executed in the Department of Correction, to be served consecutively to his sentence in the child molesting cause.

McElfresh appealed his convictions and sentence. The Court of Appeals held that there was insufficient evidence to support McElfresh's conviction for attempted obstruction of justice, explaining that "McElfresh essentially told T.W.'s mother that if T.W. intended to lie under oath, she would face legal consequences for the dishonesty. That is simply the truth. We cannot believe that in the State of Indiana it can constitute a crime to make a true statement, even if the subject matter of the true statement involves the future testimony of a witness in a criminal proceeding." McElfresh v. State, 40 N.E.3d 1259, 1262 (Ind. Ct. App. 2015), *vacated*. The court also held that because there was no evidence that A.W. talked to T.W. upon McElfresh's direction, the communication was incomplete. Id. at 1263-64. The invasion of privacy conviction was vacated, and the case remanded with instructions to enter a judgment for attempted invasion of privacy. Id. The court did not address McElfresh's sentencing argument, but rather instructed the trial court to enter a new sentence based only on the conviction for attempted invasion of privacy. Id. at 1264.

This Court granted transfer, thereby vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A). We summarily affirm the Court of Appeals only on the issue of vacating the invasion of privacy conviction and ordering a judgment of Class A Misdemeanor Attempted Invasion of Privacy be entered. See Ind. Appellate Rule 58(A)(2).

---

[4] Ind. Code §§ 35-44.1-2-2(a)(1)(B) (Supp. 2013); 35-41-5-1 (Repl. Vol. 2008).

4

**Standard of Review**

When the sufficiency of the evidence supporting a conviction is challenged, this Court will "neither reweigh the evidence nor judge the credibility of the witnesses." Wright v. State, 828 N.E.2d 904, 905-06 (Ind. 2005) (internal quotation and citations omitted). The conviction will be affirmed "if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." Id. at 906. "[W]e consider conflicting evidence most favorably to the trial court's ruling." Id.

Sentencing decisions "rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." Angelmyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." Id. at 490-91 (internal quotations and citations omitted).

**Discussion**

In the present case, McElfresh argues that there was insufficient evidence to support his conviction for attempted obstruction of justice. Upon reviewing the letter and relevant circumstances, we disagree. A reasonable trier of fact could have found that McElfresh committed each element of attempted obstruction of justice beyond a reasonable doubt, and this Court will not reweigh the evidence. In addition, we note that the Court of Appeals concluded that "[w]e cannot believe that in the State of Indiana it can constitute a crime to make a true statement, even if the subject matter of the true statement involves the future testimony of a witness in a criminal proceeding." We find this statement overly broad. In some circumstances, it is possible for a true statement to be threatening or coercive under the obstruction of justice statute.

5

For example, when an abuse victim testifies against her abuser, he or she would often have to retell the horrific details of the abuse. It would be a true statement if the abuser were to tell the victim what a horrible experience testifying would be, and how it would be much easier to not testify at all, and even if he or she did testify, people may not believe the allegation. Yet, we do not hesitate to conclude that the statement would be an attempt to coerce the victim to not testify. The present case also presents a situation in which a truthful statement could reasonably be interpreted as coercive in nature.

**I.    McElfresh's Conviction for Attempted Obstruction of Justice was Supported by Sufficient Evidence.**

In order for McElfresh to be convicted of attempted obstruction of justice, the State had to prove beyond a reasonable doubt that McElfresh: (1) knowingly or intentionally; (2) induced by threat, coercion, or false statement; (3) a witness in an official proceeding; (4) to withhold or unreasonably delay in producing any testimony, information, document or thing; and (5) by engaging in conduct which constituted a substantial step toward the commission of the aforementioned crime. Ind. Code § 35-44.1-2-2; Ind. Code § 35-41-5-1. McElfresh only disputes whether there was sufficient evidence to support the first two elements. Specifically, he argues that the content of the letter sent to A.W. was not coercive or threatening, nor did it demonstrate that he intended to influence T.W. into changing her testimony.

*A. Whether the Statements were Coercive or Threatening?*

Under the obstruction of justice statute, the term "coercion" "carries with it, at a minimum, the sense of *some form of pressure or influence being exerted on the will or choice of another*." Sheppard v. State, 484 N.E.2d 984, 988 (Ind. Ct. App. 1985). The form of pressure or influence "may vary widely—and certainly includes harassment, physical force, intimidation, and threats— as long as it is exerted knowingly or intentionally to induce conduct by a witness or informant that

6

is proscribed" by the obstruction of justice statute. Id. In addition, the failure to comply must be accompanied by a consequence. Brown v. State, 859 N.E.2d 1269, 1271 (Ind. Ct. App. 2007). If there is no consequence, the "statement is not coercive, but is merely a request." Id. In other words, the pressure exerted on A.W. must have been for the purpose of getting T.W. to change her allegation against McElfresh, and he must have expressed some consequence that could result from T.W.'s failure to change her allegations against him.

The contents of the letter demonstrate the repeated pressure McElfresh put on A.W. to obtain from T.W., what he claims was, the "truth." McElfresh stated, "I would like for you to ask [T.W.] about the whole incident. Why? Because it never happened!!!" (Exhib. 5, at 2.) "I know you will be able to get the truth out of [T.W.]" (Id.) "They were coached on what to say, and I know *if anyone could find out the truth, it would be you*." (Id.) (emphasis added). McElfresh also used his long-term relationship with A.W. to further influence her by stating, "I have known you for 10 years, I know that you are tenacious. You like a pitbull when you get ahold of something," and "if I was you, I would really like to know the truth." (Id. at 1-2.) He concludes by expressing his ultimate goal, "I hope you get to the truth of this allegation." (Id. at 4.)

This drumbeat repetition that A.W. should find out the truth, and that she may be the only person that can get to the truth, could reasonably be interpreted as more than a simple suggestion, but rather, a call to action. McElfresh even attempted to make a personal appeal to A.W. by emphasizing their ten-year friendship, and how he knows she is "tenacious" and may be the only person who could actually get to the "truth." This tactic could also be interpreted as an attempt to pressure and influence A.W. In fact, A.W.'s own testimony plainly stated that, "[McElfresh] was trying to manipulate me," and his anger over being wrongfully accused made her "nervous" and "fearful also for [her] daughter." (Tr. at 23-24.)

As McElfresh pressured A.W. to find the "truth," he went into the possible consequences that could result if T.W. did not come forward with the truth. McElfresh asserted that if the girls had been lying about certain allegations, "they would have been charged with a 'D' felony 'False

7

Informing.' They would have been charged with a felony for it. More than likely they would have been put on probation only, but they would have gotten themselves into serious trouble." (Exhib. 5, at 3.) He further threatened the potential criminal consequences for T.W. by emphasizing that his "attorney wanted to go after the girls with, conspiracy. That is another charge." (Id.)

Based upon these statements, a reasonable fact finder could conclude that the letter sent by McElfresh was coercive within the meaning of the obstruction of justice statute. Albeit, the language within the letter may not be coercive or threatening in the sense that A.W. was fearful of physical violence or personal repercussions. However, the threatened consequence here is likely to have an equivalent effect on a parent, as McElfresh threatened the very well-being of A.W.'s child, and the life-changing criminal actions that could be taken against T.W. A.W. even testified that she was fearful for her child. Regardless of whether it was a truthful statement that criminal charges could be brought against T.W. if she provided false information, the statements made by McElfresh in this context could still reasonably be seen as coercive.

### B. Whether McElfresh had the Requisite Intent under the Statute?

The next inquiry is whether the evidence reasonably supports the conclusion that McElfresh made the coercive statements as a knowing or intentional attempt to get T.W. to change her testimony. As in other criminal contexts, the trier of fact may infer that the requisite intent exists based upon circumstantial evidence. For example, in a child exploitation case, this Court recently provided, "as in other crimes, the intent element may be established by circumstantial evidence and may be inferred from the actor's conduct and the natural and usual sequence to which such conduct usually points." Delagrange v. State, 5 N.E.3d 354, 357 (Ind. 2014) (internal quotation and citation omitted). See also Haynes v. State, 479 N.E.2d 572, 574 (Ind. 1985) (Conviction for conspiracy allows "the agreement as well as the requisite guilty knowledge and intent [to] be inferred from circumstantial evidence alone . . . .") (internal quotation and citation omitted); Enamorado v. State, 534 N.E.2d 740, 742-43 (Ind. 1989) ("Based on the circumstantial evidence . . . the jury could infer the defendants' intent to deliver" for purposes of conviction for

8

dealing narcotics).  In addition, we "need not find that the circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence but only that an inference may reasonably be drawn to support the verdict."  Mills v. State, 512 N.E.2d 846, 848 (Ind. 1987) (internal citation omitted).

The language used within the letter and the surrounding circumstances would allow a reasonable trier of fact to conclude that McElfresh did knowingly or intentionally attempt to induce T.W. to change her testimony.  The content of the letter is set out in detail above, and it is sufficient to reiterate that McElfresh adamantly maintained he was innocent of the child molesting allegations, and desperately wanted A.W. to confirm this belief.  McElfresh even provided detailed explanations of how he was no longer living in the house when certain incidents allegedly occurred, and provided an elaborate theory on how the girls could have been coached into making these allegations against him because their statements were too similar to have been truthful.  A reasonable inference can be made that McElfresh was intentionally trying to convince A.W. that the allegations against him could not be true, knowing that if she believed him, she would get T.W. to tell the truth.

The context in which McElfresh wrote the letter to A.W. is also informative of how a reasonable trier of fact could have interpreted McElfresh's intent.  The following circumstances are most notable: (1) the timing of McElfresh's letter to A.W.; (2) McElfresh only disputing his guilt as to those offenses that he was about to plead guilty to, without specifically mentioning the other nine offenses that were initially charged; and (3) his belief that if the child molestation charges were dropped, he would not go to jail and would only serve probation for the lesser offenses he admitted to being guilty of.

The timing of the letter is particularly significant.  The CCS entries indicate that McElfresh, through counsel, filed a written plea agreement with the court on April 24, 2013, in which he agreed to plead guilty to three counts of Class C Felony Child Molesting; these are the very charges he denied committing in the letter.  On May 1st, McElfresh learned that his guilty plea hearing was

set for June 3rd.[5]  On May 3rd, only two days after McElfresh learned when his plea hearing would be held, he wrote the letter to A.W.  Thus, when the letter was written and received, McElfresh's guilty plea was not final.  Had the underlying allegations supporting the charges within the plea agreement been retracted, it would have been possible for McElfresh to avoid pleading guilty to those offenses.

In addition, McElfresh only claimed in the letter that he was innocent of child molestation. He did not try to persuade A.W. that he was innocent of any of the other nine offenses that he was originally charged with, but focused solely on the charges that he was about to plead guilty to.  By focusing only on those offenses, the logical inference is that he did not want to go through with pleading guilty to those offenses.  This is further supported by McElfresh's belief that if the molestation charges were dropped, he could avoid going to jail and only serve probation.  He explained in the letter that, "[i]f I had not gotten the charges from touching the girls on the 31st, I would have gotten Probation only and 2 years of counseling. But, with all of the girls stating I touched them on the 31st, I am going to Prison."  (Exhib. 5, at 3-4.)  In McElfresh's mind at the time he wrote the letter, he believed that if one specific allegation was retracted he would not have to go to jail at all.

In viewing the letter and circumstances together, the "natural and usual sequence to which such conduct" points, is that McElfresh's last hope was that the "truth" would come out before his guilty plea hearing, and he could avoid going to jail.  The trier of fact did not need McElfresh to explicitly state, "You need to get T.W. to change her statement so I can get out of this plea

---

[5] Subsequently, the plea hearing was moved to May 22nd.

agreement." The content of the letter, and the circumstances surrounding its drafting, support a reasonable inference that McElfresh did intend for that to occur.

Again, we acknowledge that portions of the letter indicate a different intent, and McElfresh also testified that it was not his intent to persuade T.W. to change her testimony. But this Court has reiterated that "judging the credibility of witnesses lies squarely within the province of the [trier of fact] and we will not reassess its credibility determinations." Stephenson v. State, 742 N.E.2d 463, 497 (Ind. 2001) (quoting Ellis v. State, 707 N.E.2d 797, 801 (Ind. 1999)). Here, the trial court reviewed the letter, and heard the testimony of both A.W. and McElfresh. We will not second guess the trial court's determination of which witness' testimony was more credible. In addition, even in light of conflicting evidence, "the rule is well settled that in reviewing the sufficiency of the evidence to sustain a conviction, this court will consider only that evidence which is most favorable to the state." Applegate v. State, 182 Ind. 266, 106 N.E. 370, 371 (1914) (string citation omitted). In viewing the evidence most favorably to the State, a reasonable trier of fact could have found McElfresh guilty of attempted obstruction of justice. McElfresh's conviction is affirmed.

## II.  The Trial Court Failed to Consider a Mitigating Factor, but the Error was Harmless.

The Court of Appeals did not reach the sentencing claim raised by McElfresh because his convictions were vacated, which alone necessitated resentencing on remand. Since we have affirmed McElfresh's conviction for attempted obstruction of justice, we now address McElfresh's sentencing claim. McElfresh was originally sentenced to an aggregate term of 600 days. The invasion of privacy conviction resulted in a 180 day sentence to run concurrently with a 600 day sentence for attempted obstruction of justice. The 600 day sentence was to run consecutively to his sentence in cause 32D03-1211-FC-000144.

11

McElfresh asserts that the trial court improperly considered his prior criminal conviction as an aggravating circumstance, and abused its discretion in failing to consider the voluntary programs McElfresh completed while in jail as a mitigating circumstance. An abuse of discretion can arise if the trial court finds aggravators that are not supported by the record or by not recognizing mitigators that are clearly supported and are advanced for consideration. Angelmyer, 868 N.E.2d at 490-91.

First, we find that it was completely appropriate for the trial court to consider McElfresh's criminal history as an aggravating factor. Indiana Code § 35-38-1-7.1(a) specifically provides that "[i]n determining what sentence to impose for a crime, the court may consider the following aggravating circumstances: . . . (2) The person has a history of criminal or delinquent behavior." At sentencing, "[t]he significance of a criminal history varies based on the gravity, nature and number of prior offenses as they relate to the current offense." Williams v. State, 838 N.E.2d 1019, 1021 (Ind. 2005) (internal quotation and citations omitted). Thus, the weight of the criminal history may vary, but consideration of it is not an abuse of discretion.

Here, the trial court properly considered McElfresh's 1999 conviction for Class D Felony Performance Harmful to a Minor, which was later reduced to a misdemeanor. This was another offense that McElfresh had committed against a child, in line with his more recent child molestation convictions, and the current offense which arose from his act of illegally attempting to contact and influence one of those child victims. Thus, his criminal history was relevant for demonstrating a pattern of offenses towards children, and a general disregard for the law.

Second, we agree that the classes McElfresh had enrolled in during his incarceration should have been acknowledged as a mitigating factor. McElfresh has the burden of demonstrating that "the trial court failed to identify or find a mitigating factor" by establishing that "the mitigating evidence is both significant and clearly supported by the record." Angelmyer, 868 N.E.2d at 493 (citation omitted). "If the trial court does not find the existence of a mitigating factor after it has

12

been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist." Id.

McElfresh argued that the trial court should have considered the programs he enrolled in while at the New Castle Correctional Facility, which included the "plus program, a boundaries class, financial planning, bible study, and substance abuse classes." (Appellant's Br. at 15.) McElfresh explained that the classes were about how to "become a better father. To become a better man." (Tr. at 68.) McElfresh also enrolled in these programs, knowing that none would make him eligible for reduced time. Because the proposed mitigating factor was argued and was significant based upon McElfresh receiving no additional benefit for having enrolled, we conclude that this factor was at least slightly mitigating. Thus, the trial court abused its discretion in affording no weight at all to McElfresh's enrollment in programs while incarcerated.

"Where we find an irregularity in a trial court's sentencing decision, we have the option to remand to the trial court for clarification or new sentencing determination, to affirm the sentence if the error is harmless, or to reweigh the proper aggravating and mitigating circumstances independently at the appellate level." Cotto v. State, 829 N.E.2d 520, 525 (Ind. 2005) (citation omitted). In the present case, even if McElfresh's enrollment in various programs had been considered, we are persuaded that his criminal history, which demonstrated a pattern of offenses towards children, would likely have outweighed this mitigating factor. As such, we determine that any error was harmless. We affirm McElfresh's sentence of 600 days for his obstruction of justice conviction.

**Conclusion**

We hold that there was sufficient evidence to support McElfresh's conviction for attempted obstruction of justice. We also hold that the trial court failed to properly acknowledge a mitigating factor, but that any error was harmless. We affirm McElfresh's sentence of 600 days. This case is otherwise remanded in accordance with the Court of Appeals opinion, directing that McElfresh's

conviction for invasion of privacy be vacated, and a judgment of conviction on attempted invasion of privacy be entered. We instruct the trial court to resentence McElfresh on attempted invasion of privacy, but advise that both sentences should continue to run consecutively to McElfresh's sentence in cause 32D03-1211-FC-000144.

Rush, C.J., Dickson, Rucker, and Massa, J.J., concur.