# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 28 2016, 5:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Victoria L. Bailey
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Rodney Bradford,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | September 28, 2016<br><br>Court of Appeals Case No.<br>49A02-1512-CR-2294<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Leah Cannon, Judge Pro Tempore<br><br>Trial Court Cause No.<br>49G10-1501-CM-110 |

**Brown, Judge.**

[1]     Rodney Bradford appeals his convictions for intimidation as a class A misdemeanor and malicious mischief as a class B misdemeanor.  Bradford

raises two issues which we consolidate and restate as whether the evidence is sufficient to sustain his convictions. We affirm in part and reverse in part.

### Facts and Procedural History

[2] In 2014, Bradford had a disagreement about insurance coverage with a private insurance company. In February 2014, he submitted a complaint to the Indiana Department of Insurance ("IDOI"). The IDOI investigated, negotiated a settlement for Bradford with the insurance company, and closed his case in August 2014. When IDOI informed Bradford that his case was closed because there was nothing more it could do for him, he indicated "he was not going to let this, uh, let this go." Transcript at 94. He asserted the closing of his case was "unacceptable, and that he would take this to . . . a higher level." *Id*. Bradford was "quite angry and uh, convinced that we at the [IDOI] had not done our job and that we were violating his civil rights." *Id*. at 96.

[3] On August 20, 2014, the Security Coordinator for IDOI, Charles Michael Herndon, began investigating Bradford because of concerns raised by IDOI employees who had interacted with Bradford. Among Bradford's tweets, Herndon found multiple references to a 2005 case in which a judge's family had been killed because of a "medical claim dispute." *Id*. at 114. Bradford's tweets indicated "other government officials . . . should be concerned because of that case." *Id*. at 119. Herndon relayed the information to the Capitol Police. He printed a picture of Bradford from government records, warned the receptionists, and posted Bradford's picture at the IDOI reception area.

[4] On December 22, 2015, when IDOI employee Charles Johnson was opening mail addressed to the IDOI, he noticed the mail room "smelled like poop." *Id.* at 23. As he opened a package from Bradford, "the smell was just incredible." *Id.* Bradford's package was addressed to the Commissioner of the IDOI, Stephen Robertson, and to an employee in Governor Mike Pence's office, Kristin Kane. The package contained a letter and a sandwich bag holding tissue paper covered with blood and feces. The letter had originated at the IDOI and been sent to Bradford to explain why the IDOI could not help him further with his complaint against the private health insurance company. Bradford had added a hand-written note on the letter's cover-page that said: "Merry F------ Christmas To You Gov. Pence." State's Exhibit 3. On one of the other pages, Bradford had written "Fix The Godamn [sic] Problem Mikey!" *Id.*

[5] Johnson immediately contacted Commissioner Robertson's executive assistant, Dawn Bopp. When Johnson showed the package to Bopp, she recognized Bradford's name. Bopp had answered calls from Bradford while he was trying to reach the Commissioner, and she expected the letter from him to be angry. When she saw the contents of the plastic baggie, she felt "very uncomfortable . . . because [she] felt that that was more of a threat that he had taken a step further." Transcript at 41. She "wasn't sure what it was, or . . . if [a person] could be contaminated by it, even thought [sic] it was in a baggie and [she] had gloves." *Id.* Bopp called in Anna Amick, who is part of the security team for the IDOI.

When Amick arrived and saw the envelope, she recognized Bradford's name because he was on a list of "certain individuals that we keep, uh, an eye out for." *Id.* at 57-58. His picture is kept up at the front of the IDOI because they "were aware of him as a potential threat." *Id.* at 59. Amick contacted Capitol Police, and Detective Charles Meneely, Jr., was among those who responded. Detective Meneely helped secure the biohazardous material and conducted further investigation of Bradford.

The State charged Bradford with intimidation as a class A misdemeanor and malicious mischief as a Class B misdemeanor, and following a bench trial, the court found Bradford guilty of the charged offenses. The court sentenced Bradford to 365 days for his conviction for intimidation and 180 days for his conviction for malicious mischief, each suspended except for time served, to be served concurrently.

### *Discussion and Decision*

When the sufficiency of the evidence supporting a conviction is challenged, we will neither reweigh the evidence nor judge the credibility of the witnesses. *McElfresh v. State*, 51 N.E.3d 103, 107 (Ind. 2016). The conviction will be affirmed if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.*

On a claim of insufficient evidence, we have a duty "to examine the evidence closely, not with a view towards resolving conflicts thereon, but for the purpose of determining whether [], after resolving all reasonable doubts in favor of the verdict, it may be said that, on such evidence, a reasonable [person] could have reached such a verdict, beyond a reasonable doubt." *Smith v. State*, 21 N.E.3d 121, 124 (Ind. Ct. App. 2014) (citing *Woods v. State*, 274 Ind. 624, 629, 413 N.E.2d 572, 575 (1980)).

*Intimidation*

Ind. Code § 35-45-2-1 governs the offense of intimidation and provides in part that "[a] person who communicates a threat to another person, with the intent: (1) that the other person engage in conduct against the other person's will; [or] (2) that the other person be placed in fear of retaliation for a prior lawful act . . . commits intimidation, a Class A misdemeanor." Ind. Code § 35-45-2-1(a). Bradford asserts "there was no evidence that what Mr. Bradford expressed was a threat." Appellant's Brief at 10.

Ind. Code § 35-45-2-1(d) provides:

> "Threat" means an expression, by words or actions, of an intention to:
>
> (1)  unlawfully injure the person threatened or another person, or damage property;
>
> (2)  unlawfully subject a person to physical confinement or restraint;
>
> (3)  commit a crime;

(4)     unlawfully withhold official action, or cause such
        withholding;

(5)     unlawfully withhold testimony or information with
        respect to another person's legal claim or defense,
        except for a reasonable claim for witness fees or
        expenses;

(6)     expose the person threatened to hatred, contempt,
        disgrace, or ridicule;

(7)     falsely harm the credit or business reputation of the
        person threatened; or

(8)     cause evacuation of a dwelling, a building, another
        structure, or a vehicle.

[12]    The Indiana Supreme Court recently explained the difficulty the State faces

when it attempts to prosecute for intimidation based on the defamatory

statements included as threats in subsections (d)(6) and (d)(7) of Indiana Code §

35-45-2-1, if the statements were made about "public figures or issues of public

concern." *Brewington v. State*, 7 N.E.3d 946, 962 (Ind. 2014) (such prosecutions

are "all but impossible" because of First Amendment free-speech protections),

*reh'g denied*, *cert. denied*.  Because Bradford's communication was prompted by

his perceived inability to obtain a particular form of health insurance and was

directed at Indiana's Governor and the Commissioner of the IDOI, the State

would face a heavy burden to prove his statements could be threats to "(6)

expose the person threatened to hatred, contempt, disgrace, or ridicule" or to

"(7) falsely harm the credit or business reputation of the person threatened"

under Ind. Code § 35-45-2-1(d), as public officials are "subject to 'vehement,

caustic, and sometimes unpleasantly sharp attacks.'" *Brewington*, 7 N.E.3d at 959 (quoting *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 51 (1988)). Even if "those attacks are unfair, offensive, or ignorant, the First Amendment protects them so that legitimate debate will not be stifled." *Id*.

[13] Nevertheless, the State can convict Bradford for threats against public officials that "communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Id*. at 963 (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)). Thus, we must determine whether Bradford made a "true threat." *See id*.

[14] We first note that our analysis of whether Bradford expressed a "true threat" includes more than just his words. Because "a threat is an expression, by words or actions," Ind. Code § 35-45-2-1(d), we also consider the message expressed by the enclosure of a plastic bag containing tissue paper with blood and feces on it. *See*, *e.g.*, *Black*, 538 U.S. at 357 ("the burning of a cross is symbolic expression").

[15] We further note that "threats, particularly veiled threats, are heavily dependent on all of the contextual factors." *Brewington*, 7 N.E.3d at 964 (internal quotation marks and citation omitted).

> As the Seventh Circuit has long recognized, "Written words or phrases take their character as threatening or harmless from the context in which they are used, measured by the common experience of the society in which they are published." Particularly with implied threats, then, juries are not bound to "rigid adherence to the literal meaning of a communication"

while turning a blind eye "to its reasonable connotations derived from its ambience"—because doing so "would render [prohibitions on threats] powerless against the ingenuity of threateners who can instill in the victim's mind as clear an apprehension of impending injury by an implied menace as by a literal threat." Nor are juries "preclude[d from] finding . . . a threat any time the defendant can conjure up some conceivable alternative explanation for his words." The true meaning of a facially ambiguous threat is for a jury to decide, as long as the State presents "sufficient extrinsic evidence, capable of showing beyond a reasonable doubt that an ordinary and reasonable recipient *familiar with the context* of the [statement] would interpret it as a threat."

*Id*. at 963-964 (internal citations omitted).

[16] Here, Bradford's angry interactions with IDOI staff had led to him being investigated by IDOI security as a possible threat. That investigation uncovered Bradford's online references to a judge's family that was killed because of a dispute over a medical claim. IDOI warned its staff to watch for Bradford and posted his picture in its reception area. Into this context, he sent a bag of bloody feces with notes that included expletives telling the Governor to "Fix" the problem. State's Exhibit 3. Bradford admitted that, if he received somebody's fecal matter or blood in the mail, "[t]hat would be (inaudible) cause for concern." Transcript at 189.[1]

---

[1] Bradford also testified he was "trying to call for help, cry for help . . . [and] there was never any intent to, uh, cause harm or fear or panic in any way." Transcript at 162. The court as the trier of fact was not required to credit Bradford's testimony, and we will not reweigh the evidence or judge the credibility of the witnesses. *See McElfresh*, 51 N.E.3d at 107.

[17] Based upon the record, the State presented evidence from which a reasonable trier of fact could have found that "an ordinary and reasonable recipient," *Brewington*, 7 N.E.3d at 964, of the package containing the handwritten notes and plastic bag containing blood and feces, and who is also "familiar with the context" of Bradford's previous interactions with the IDOI and his social media comments, *id.*, would interpret the receipt of the package as a threat to unlawfully injure the person threatened or another person or damage property under Ind. Code § 35-45-5-1(d)(1) or to commit a crime under Ind. Code § 35-45-2-1(d)(3) if the IDOI did not resolve his case in a manner that satisfied him. *See Brewington*, 7 N.E.3d at 963 ("The 'intent' that matters is not whether the speaker really means to carry out the threat, but only whether he intends to 'plac[e] the victim in fear of bodily harm or death.'") (quoting *Black*, 538 U.S. at 359-360). We conclude the State presented evidence of probative value from which a reasonable trier of fact could have determined beyond a reasonable doubt that Bradford committed the offense of intimidation as a class A misdemeanor.

### Malicious Mischief

[18] Ind. Code § 35-45-16-2 governs the offense of malicious mischief and provides in part that "[a] person who recklessly, knowingly, or intentionally places human: (1) body fluid; or (2) fecal waste; in a location with the intent that another person will involuntarily touch the body fluid or fecal waste commits malicious mischief, a Class B misdemeanor." Ind. Code § 35-45-16-2(c). The term "body fluid" includes blood. Ind. Code § 35-45-16-2(a). A person engages

in conduct "intentionally" if, "when he engages in the conduct, it is his conscious objective to do so," and a person engages in conduct "knowingly" if, "when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2. The State's charging information alleged that Bradford "did knowingly place human blood and/or fecal waste in a location, to-wit: an envelope addressed to Stephen Robertson, with the intent that Stephen Robertson would involuntarily touch it." Appellant's Appendix at 22.

[19] Bradford contends the State failed to prove beyond a reasonable doubt he committed the crime of malicious mischief because there was no evidence that he intended Commissioner Robertson to involuntarily touch blood or fecal waste. He argues that he "sealed the toilet paper smeared with blood and feces inside of a plastic bag" and that "[t]hus, the only way for Mr. [Robertson] to touch the blood or fecal waste would be to do so voluntarily – by opening the bag." Appellant's Brief at 18. The State responds that Bradford's argument "assumes that the Commissioner would be aware of the contents of the baggie, which would not necessarily be the case," that "[t]his is particularly plausible if he were in a hurry and did not pay attention to the contents of the baggie—and he would certainly not be expecting a baggie containing bloody feces," and that "[i]t may be inferred that [Bradford] placed the bloody feces in the plastic baggie . . . with the intent that during transit it would be compromised and the contents exposed within the mailing envelope such that when the

Commissioner opened the envelope he could inadvertently touch the bloody feces." Appellee's Brief at 18.

[20] In order to have committed the offense of malicious mischief, Ind. Code § 35-45-16-2 provides that Bradford must have intended that another person "involuntarily touch the body fluid or fecal waste." The State presented evidence that Bradford placed tissue paper with blood and feces on it into a transparent plastic bag.[2] Bradford placed the plastic bag and several sheets of paper, at least two of which contained his handwritten notes, into an envelope, and the enclosed sheets of paper were not inside the plastic bag.[3] The State does not point to evidence or testimony that the contents of the transparent plastic bag had escaped or leaked from the bag. Moreover, it is significant that the plastic bag containing the blood and fecal matter was transparent. We do not believe that a reasonable factfinder could find beyond a reasonable doubt that Bradford, by selecting a transparent bag in which to place tissue paper with blood and feces on it, intended that the recipient would open the bag or that the act of placing the tissue paper in the transparent bag would reasonably result in the recipient of the bag choosing to open it and touch its contents.

---

[2] Based on State's Exhibit 3, the bag appears to be a sandwich-size bag, approximately six inches in length by six inches in width, with a zip-lock seal.

[3] Based on State's Exhibit 3, the envelope appears to be approximately twelve inches in length by nine inches in width.

[21] Based upon the record, including the size of the smaller plastic bag relative to the larger envelope, the fact that the plastic bag was transparent, and the fact that Bradford included handwritten notes on papers which were not inside the plastic bag, we conclude that the State did not present evidence from which a reasonable trier of fact could determine beyond a reasonable doubt that Bradford intended for the person opening the envelope or another person to involuntarily touch the contents of the enclosed transparent bag. Accordingly, we reverse Bradford's conviction for malicious mischief.

### *Conclusion*

[22] For the foregoing reasons, we affirm Bradford's conviction for intimidation as a class A misdemeanor and reverse his conviction for malicious mischief as a class B misdemeanor.[4]

[23] Affirmed in part and reversed in part.

Baker, J., concurs.

May, J., concurs in part and dissents in part with separate opinion.

---

[4] Bradford's aggregate sentence is not affected as the court ordered his sentence for his conviction for malicious mischief to be served concurrently with his sentence for his conviction for intimidation.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Rodney Bradford, | September 28, 2016 |
| *Appellant-Defendant,* | Court of Appeals Case No. 49A02-1512-CR-2294 |
| v. | Appeal from the Marion Superior Court |
| State of Indiana, | The Honorable Leah Cannon, Judge Pro Tempore |
| *Appellee-Plaintiff.* | Trial Court Cause No. 49G10-1501-CM-110 |

**May, Judge, concurring in part and dissenting in part.**

[24] I concur with the majority's decision to affirm Bradford's conviction of Class A misdemeanor intimidation.[5] However, I would not reverse Bradford's

---

[5] Ind. Code § 35-45-2-1(a)(1) (2014).

conviction of Class B misdemeanor malicious mischief.[6]  Accordingly, I respectfully dissent in part.

[25]  I believe a reasonable trier of fact could infer Bradford intended Commissioner Robertson to involuntarily touch the fecal waste or blood upon opening the package.  Whether a person acted intentionally is "almost inevitably, absent a defendant's confession or admission, a matter of circumstantial proof." *Hampton v. State*, 961 N.E.2d 480, 487 (Ind. 2012).  Intent "may be inferred from the actor's conduct and the natural and usual sequence to which such conduct usually points."  *Delagrange v. State*, 5 N.E.3d 354, 357 (Ind. 2014) (quoting *Bowles v. State*, 737 N.E.2d 1150, 1152 (Ind. 2000)).

[26]  The package in which Bradford placed the bag containing the blood and feces had only addresses and postage stamps; Bradford did not indicate someone opening the package should be cautious, nor did he request the post office treat the package as fragile or stamp it by hand.  IDOI employees testified the package smelled of feces, which suggests the plastic bag either was not sealed or had come opened in transit.  Because we must consider conflicting evidence most favorably to the trial court's ruling, *McElfresh v. State*, 51 N.E.3d 103, 107 (Ind. 2016), I would affirm Bradford's conviction of Class B misdemeanor malicious mischief, and I dissent from that part of the majority's decision.

---

[6] Ind. Code § 35-45-16-2(c) (2014).