## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 30 2018, 11:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Auger
Franklin, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Joseph Evan Avart,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

November 30, 2018

Court of Appeals Case No.
41A04-1712-CR-2968

Appeal from the Johnson Circuit Court

The Honorable K. Mark Loyd, Judge

Trial Court Cause No.
41C01-1612-MR-1

**Baker, Judge.**

[1] Joseph Avart appeals the sentence imposed by the trial court after Avart pleaded guilty to Level 1 Felony Burglary[1] and Level 2 Felony Manslaughter.[2] Avart argues that the trial court failed to consider certain mitigating factors and that the sentence is inappropriate in light of the nature of the offenses and his character. Finding no sentencing error and that the sentence is not inappropriate, we affirm.

## Facts

[2] In the months leading up to December 2016, Avart was involved in an on-again-off-again relationship with Mindy Tennenhouse. Tennenhouse had previously been in a committed relationship with Andrew Perry, but in July 2016, she left Perry to live with Avart. By October 2016, Tennenhouse had reconciled with Perry and moved back in with him in November. During her separation from Avart, she maintained contact with him and repeatedly suggested that she wanted to leave Perry again.

[3] By that time, Avart had begun stalking Perry. During November 2016, Avart drove by Perry's home approximately five times. He asked his mother, who was an employee with the Illinois State Police, to run a criminal background check on Perry.

---

[1] Ind. Code § 35-43-2-1.

[2] Ind. Code § 35-42-1-3.

[4] On November 29, 2016, Tennenhouse visited Avart at his home and the two engaged in sexual intercourse. The next day, Tennenhouse again told Avart that she loved him and wanted to be with him. Later that day, Avart went to the Indianapolis International Airport, where Perry was expected to arrive after being away from home for work. Avart located Perry's car and followed Perry all the way to his home in Greenwood. Avart wanted Perry to "think somebody was over his shoulder[.]" Tr. Vol. II p. 26.

[5] The next day, Avart went to a gun store, where he purchased two boxes of ammunition for the handgun that he kept inside the glove compartment in his car. He reached out to an acquaintance to ask whether the GPS location devices in his vehicle and cell phone could be used to track his whereabouts.

[6] In the early morning hours of December 2, 2016, Avart drove to Perry's house after Tennenhouse had left for work. Avart parked his car several blocks down from Perry's house. Before exiting his car, he placed his handgun and a baggie of a cocaine lookalike substance in his pockets. Avart entered Perry's house through an open garage door. After Perry discovered Avart inside his house, the two men became involved in a verbal altercation and Perry became very upset. Perry moved toward Avart, who tripped and fell backwards. Avart then pulled his gun out of his pocket and shot Perry in the head.

[7] Believing Perry to be dead, Avart removed several items in the kitchen and threw them on the floor to make it appear as though a robbery had occurred. He left the cocaine lookalike substance near Perry and fled the scene. Perry's

mother later discovered her son several hours later. Police and paramedics arrived at the scene, and Perry was pronounced dead.

[8] Avart initially admitted to following Perry to unsettle him but denied that he had been at Perry's home on the morning of the incident. After police obtained the GPS data from Avart's vehicle and Avart's cell phone records, which showed him near Perry's home at the time Perry was killed, Avart confessed to killing Perry.

[9] On December 19, 2016, the State charged Avart with one count of murder, later amending the charging information to add charges of Level 2 felony voluntary manslaughter and Level 1 felony burglary. On November 13, 2017, Avart pleaded guilty to voluntary manslaughter and burglary in exchange for the dismissal of the murder charge. Following a sentencing hearing, the trial court sentenced Avart to concurrent terms of twenty-five years for voluntary manslaughter and thirty-five years for burglary. Avart now appeals.

## Discussion and Decision

[10] Avart raises two arguments on appeal: (1) the trial court erroneously failed to consider relevant mitigating factors; and (2) the sentence is inappropriate in light of the nature of the offenses and his character.

[11] With respect to mitigators not found by the trial court, Avart has the burden of demonstrating that the mitigating evidence is both significant and clearly supported by the record. *McElfresh v. State*, 51 N.E.3d 103, 112 (Ind. 2016). Even if we find error, we will affirm if we are persuaded that the trial court

would have imposed the same sentence had it considered the proffered mitigators. *Id.*

[12] First, Avart argues that the trial court should have considered the fact that he pleaded guilty to be a mitigating factor.[3] A guilty plea need not be considered a significant mitigator where the defendant reaped a substantial benefit from the plea or where the evidence against the defendant is so overwhelming that the plea is merely a pragmatic decision. *Wells v. State*, 836 N.E.2d 475, 479 (Ind. Ct. App. 2005).

[13] Here, Avart reaped a substantial benefit by pleading guilty. Had he been convicted of murder, he faced a sentence of forty-five to sixty-five years imprisonment. Ind. Code § 35-50-2-3. By pleading guilty instead to one Level 1 and one Level 2 felony, he decreased his sentencing exposure—and indeed, his sentence here was an aggregate thirty-five-year term, which is ten years less than the minimum term he would have faced had he been convicted of murder. Moreover, the guilty plea was a pragmatic decision made at the eleventh hour—less than two weeks before his jury trial was to take place. *See Barker v. State*, 994 N.E.2d 306, 311-12 (Ind. Ct. App. 2013) (noting that a defendant who pleads guilty shortly before trial may not be entitled to any mitigating weight for such a decision). Additionally, the evidence against him—including

---

[3] Avart did not argue that the trial court should consider his guilty plea or—later discussed herein—his remorse as mitigators. Instead, Avart advanced only two mitigators: his lack of a criminal history and the undue hardship that a lengthy incarceration would place on his family. Under these circumstances, we could easily conclude that he has waived this argument but will address it nonetheless.

his own confession—was overwhelming. Under these circumstances, we find that the trial court did not err by not finding the guilty plea to be a mitigator.

[14] Second, Avart argues that his remorse should have been a mitigating circumstance. The trial court did consider Avart's show of remorse, but merely found it to be unconvincing:

> You generally have appeared very remorseful. That is the demeanor that you've presented to this Court. But your statements at the time of the arrest coupled with your written statement to me create confusion that doesn't allow for an easy path, and certainly not a mitigated path.

Tr. Vol. II p. 66-67. It is well established that the trial court, "which has the ability to correctly observe the defendant and listen to the tenor of his or her voice, is in the best position to determine whether the remorse is genuine." *Corralez v. State*, 815 N.E.2d 1023, 1025 (Ind. Ct. App. 2004). Here, we see no reason to second-guess the trial court's determination that Avart's show of remorse was not sincere and, consequently, was not a mitigating factor.

[15] Next, Avart contends that the sentence imposed by the trial court is inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) provides that this Court may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. We must "conduct [this] review with substantial deference and give 'due consideration' to the trial court's decision—since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived

'correct' sentence . . . ." *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

[16] Avart was convicted of one Level 1 felony, for which he faced a term of twenty to fifty years imprisonment, with an advisory term of thirty years. I.C. § 35-50-2-4(a). The trial court imposed a thirty-five-year sentence, which is slightly above the advisory but far below the maximum possible term. He was also convicted of one Level 2 felony, for which he faced a term of ten to thirty years imprisonment, with an advisory term of seventeen and one-half years. I.C. § 35-50-2-4.5. The trial court imposed a twenty-five-year sentence, which is again above the advisory but below the maximum possible term. Additionally, the trial court ordered that the sentences be served concurrently, meaning that his aggregate thirty-five-year sentence was far below the maximum possible term of eighty years imprisonment.

[17] As for the nature of Avart's offenses, he stalked Perry for weeks, repeatedly driving by his house and on one occasion, following him home from the airport to unsettle him. In the days leading up to the crimes, Avart purchased ammunition for his handgun, purchased a cocaine lookalike substance, and asked a friend whether the GPS in his phone and vehicle could be used to track his whereabouts. In other words, Avart carefully planned and prepared for these crimes. After killing Perry, Avart ransacked his home to make it appear as though Perry had died during a botched robbery, leaving Perry's body for his mother to find. Avart then lied to the police repeatedly until finally being

confronted with incontrovertible evidence that he had, in fact, been at Perry's home on the morning of the incident. We do not find that the nature of the offenses aids Avart's inappropriateness argument.

[18] With respect to Avart's character, it is true that he does not have a criminal history. But the trial court reasonably found that the premeditated, calculated nature of Avart's crime is sufficient to overcome the lack of a prior criminal history. *See Eversole v. State*, 873 N.E.2d 1111, 1114 (Ind. Ct. App. 2007) (finding sentence not inappropriate where defendant had no criminal history but the violent nature of the crime, particularly the fact that defendant had killed a man, overcame the lack of prior criminal history). We also note that Avart's dishonesty, including his attempt to cover up the crime, speaks ill of his character.

[19] Under these circumstances, we find that the sentence imposed by the trial court is not inappropriate in light of the nature of the offenses and Avart's character.

[20] The judgment of the trial court is affirmed.

May, J., and Tavitas, J., concur.