## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 15 2016, 7:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Suzy St. John
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Marjorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jeremy Arthur,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 15, 2016

Court of Appeals Case No.
49A02-1510-CR-1755

Appeal from the Marion Superior Court

The Honorable Christina Klineman, Judge

Trial Court Cause No.
49G17-1508-CM-29975

**Vaidik, Chief Judge.**

# Case Summary

[1] Less than two hours after Jeremy Arthur was served with a protective order that prohibited him from "harassing, annoying, telephoning, contacting, or directly or indirectly communicating with" his daughter and another child, he twice drove "crazy" past a house—where he knew the children would be—when the children were outside. The State charged Arthur with invasion of privacy as a Class A misdemeanor, and the trial court found him guilty. Arthur appeals, challenging the sufficiency of the evidence. Because the evidence shows that Arthur indirectly communicated with the children, we affirm his conviction for invasion of privacy.

# Facts and Procedural History

[2] On Friday, August 21, 2015, Arthur was served with an ex parte protective order that prohibited him from "harassing, annoying, telephoning, contacting, or directly or indirectly communicating" with his daughter, R.S., and another child, S.H. Arthur knew that R.S. and S.H. had been going to Arthur's grandfather's house on Friday afternoons. Less than two hours after Arthur was served with the protective order, Arthur's grandmother (who was divorced from Arthur's grandfather) went to Arthur's grandfather's house and waited in the driveway to pick up R.S. and S.H. As S.H. came out of the house, Arthur's grandmother heard "crazy driving" behind her. Tr. p. 15. She looked up and saw her ex-husband directing R.S. back into the house. She then saw Arthur driving down the street. After Arthur drove past, Arthur's grandmother

brought R.S. to her car. Arthur then drove by a second time, "squeaking down the street again." *Id.*

[3] The State charged Arthur with invasion of privacy as a Class A misdemeanor for violating the ex parte protective order. *See* Ind. Code § 35-46-1-15.1. Following a bench trial, the trial court found Arthur guilty and sentenced him to 365 days with 351 days suspended.[1]

[4] Arthur now appeals.

# Discussion and Decision

[5] Arthur contends that the evidence is insufficient to support his conviction. When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the conviction. *Sallee v. State*, No. 03S00-1504-LW-00237, 2016 WL 1051588, at *3 (Ind. Mar. 16, 2016). It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* Evidence is sufficient if an inference may reasonably be drawn from it to support the conviction. *Id.*

---

[1] Arthur was also convicted of driving with a suspended license, but he does not challenge that conviction on appeal.

[6]     A person who (1) knowingly or intentionally (2) violates an ex parte protective order commits invasion of privacy as a Class A misdemeanor.  *See* Ind. Code § 35-46-1-15.1(2).  Here, it is undisputed that a valid protective order was in place for the children and that Arthur was aware of it.  The only issue is whether Arthur violated the protective order by "harassing, annoying, telephoning, contacting, or directly or indirectly communicating with" R.S. or S.H.

[7]     The record shows that Arthur knew S.H. and R.S. would be at his grandfather's house.  Less than two hours after being served with the protective order, Arthur drove "crazy" by the house when S.H. and R.S. were outside, causing Arthur's grandfather to direct R.S. back inside.  Then, after Arthur's grandmother loaded R.S. into her car, Arthur drove by a second time, "squeaking down" the street.  The reasonable inference from the evidence is that Arthur indirectly communicated with the children.

[8]     This case is different from those cases where the defendant asked a third person to convey a letter or message to a protected person, but the letter or message was never delivered.  *See, e.g., McElfresh v. State*, 40 N.E.3d 1259, 1263 (Ind. Ct. App. 2015), *issue summarily aff'd by* No. 32S01-1511-CR-00667, 2016 WL 830921, at *1 (Ind. Mar. 3, 2016) (finding that the evidence supported only *attempted* invasion of privacy because the communication was not completed).  In contrast, here Arthur personally went to the place where he knew the children would be and made noise as he drove by the house—not once but twice—when they were outside.  Because the State presented sufficient evidence

that Arthur violated the protective order, we affirm his conviction for invasion of privacy as a Class A misdemeanor.

[9] Affirmed.

Barnes, J., and Mathias, J., concur.