## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 24 2019, 6:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bruce W. Graham
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jose E. Santiago-Vazquez, *Appellant-Defendant,* | July 24, 2019 |
| | Court of Appeals Case No. 18A-CR-2680 |
| v. | Appeal from the Tippecanoe Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Steven P. Meyer, Judge |
| | Trial Court Cause No. 79D02-1710-F3-23 79D02-1802-F3-5 |

**Tavitas, Judge.**

## Case Summary

In this consolidated appeal,[1] Jose E. Santiago-Vazquez appeals his convictions and thirty-two-year aggregate sentence for two counts of aggravated battery, Level 3 felonies, in separate causes. We affirm.

## Issues

Santiago-Vazquez raises two issues on appeal, which we restate as follows:

> I.    Whether Santiago-Vazquez's sentences run afoul of the prohibition against double jeopardy.

> II.   Whether the trial court abused its sentencing discretion in identifying aggravating and mitigating circumstances.

> III.  Whether the trial court abused its sentencing discretion by imposing consecutive sentences.

> IV.   Whether Santiago-Vazquez's sentences are inappropriate in light of the nature of his offenses and his character.

## Facts

This matter arose from two incidents of domestic violence against the same victim, D.M. Santiago-Vazquez, who is originally from the U.S. territory of Puerto Rico, and D.M. met in California. Santiago-Vazquez moved to Tippecanoe County, Indiana, to be in a romantic relationship with D.M.

---

[1] This is a consolidated appeal from Causes 79D02-1802-F3-5 and 79D02-1710-F3-23.

[4]     Over the span of several hours on the night of August 28, 2017, and into the following morning, Santiago-Vazquez brutally beat D.M. in an unprovoked attack (the "August 2017 incident"). Afterwards, D.M. begged Santiago-Vazquez to take her to a hospital; he complied only after he ordered D.M. to shower and change her clothes. Santiago-Vazquez then drove D.M. to the hospital in her vehicle and left her at the hospital. Without her permission, Santiago-Vazquez fled the hospital in D.M.'s vehicle, which he abandoned in a parking lot. As a result of the attack, D.M. sustained "an orbital blowout fracture and a broken nose"; D.M. also suffered extreme pain, and her injuries resulted in serious permanent disfigurement. Tr. Vol. II p. 20.

[5]     After the August 2017 incident, Santiago-Vazquez returned to Puerto Rico. While Santiago-Vazquez was in Puerto Rico, Hurricane Maria struck the island and displaced him. Santiago-Vazquez subsequently returned to the U.S. mainland and resumed living with D.M.

[6]     On October 2, 2017, the State charged Santiago-Vazquez, under seal, in Cause Number 79D02-1710-F3-23, with the following offenses stemming from the August 2017 incident: Count I, aggravated battery, a Level 3 felony; Count II, criminal confinement, a Level 3 felony; Count III, criminal confinement while armed with a deadly weapon, a Level 3 felony; Count IV, battery resulting in serious bodily injury, a Level 5 felony; Count V, intimidation by drawing or using a deadly weapon, a Level 5 felony; Count VI, battery resulting in moderate bodily injury, a Level 6 felony; Count VII, strangulation, a Level 6

felony; Count VIII, auto theft, a Level 6 felony; and Count IX, interference with the reporting of a crime, a Class A misdemeanor.

[7] On the afternoon of February 22, 2018, Santiago-Vazquez brutally attacked D.M. (the "February 2018 incident") after D.M. returned from walking her dog. This time, D.M. suffered "a broken nose, broken ribs, [ ] a broken orbital socket," as well as "several facial fractures, a dislocated elbow[,]" and "a broken bone in her neck." *Id*. at 22, 34. Afterwards, D.M. was "in and out of consciousness"; had "substantial swelling, bruising, obvious deformities to her face and arms"; suffered "collapsed teeth, a fractured jaw, sinus impaction, . . . severe nerve damage . . . to the areas of her face" and required "reconstructive surgery, including a metal plate in her face[.]" *Id*. at 34, 61.

[8] On February 28, 2018, the State charged Santiago-Vazquez in Cause Number 79D02-1802-F3-5, with the following offenses stemming from the February 2018 incident: Count I, aggravated battery, a Level 3 felony; Count II, criminal confinement resulting in serious bodily injury, a Level 3 felony; Count III, domestic battery resulting in serious bodily injury, a Level 5 felony; Count IV, domestic battery by means of a deadly weapon, a Level 5 felony; and Count V, strangulation, a Level 6 felony. That same day, the trial court entered a no-contact order barring Santiago-Vazquez from contacting D.M.

[9] On July 2, 2018, Santiago-Vazquez mailed a letter to D.M. *See* Ex. 29. Enclosed in the letter was "a handmade cross necklace" that belonged to Santiago-Vazquez. *Id*. at 36.

[10] On August 10, 2018, Santiago-Vazquez entered guilty pleas to the following offenses: in Cause 79D02-1710-F3-23, Count I, aggravated battery, a Level 3 felony; and Count VIII, auto theft, a Level 6 felony; and in Cause 79D02-1802-F3-5, Count I, aggravated battery, a Level 3 felony; and Count IV domestic battery by means of a deadly weapon, a Level 5 felony. In exchange for Santiago-Vazquez's guilty pleas, the State agreed to dismiss all remaining counts. The State left sentencing to the discretion of the trial court.

[11] At his sentencing hearing on October 12, 2018, Santiago-Vazquez expressed remorse, asked for forgiveness, and promised to "find help." Tr. Vol. II at 51. Defense counsel argued that Santiago-Vazquez's "minimal criminal history" and remorse were mitigating factors and asked the trial court to "keep[ ] in mind [Santiago-Vazquez's] age[2] and his prospects for rehabilitation in imposing the sentence." *Id*. at 53.

[12] Defense counsel also engaged in the following discussion with the trial court regarding double jeopardy implications of the judgment:

> THE COURT: I understand you're saying they're not consecutive, but can the Court enter two separate convictions [for aggravated battery and domestic battery]?
>
> [DEFENSE COUNSEL]: Oh, yeah. They can enter two separate convictions, yes.

---

[2] Santiago-Vasquez was fifty-five years of age at the time of sentencing.

THE COURT: Probation is recommending they run concurrent.

[DEFENSE COUNSEL]: Correct.

THE COURT: So you're simply arguing against the consecutive part?

[DEFENSE COUNSEL]: The consecutive nature part.

THE COURT: So you're not saying that they merge?

[DEFENSE COUNSEL]: I'm not saying that.

THE COURT: The Court can, in fact, enter convictions on both counts?

[DEFENSE COUNSEL]: Right.

THE COURT: I just wanted to clarify your point. All right.

*Id*. at 60-61.

[13] The State argued that "[t]he facts of this case are extremely aggravating" and sought "a fully executed sentence on each and every count and each and every case" and that "all counts [should] be run consecutively and both cases [should] run consecutively." *Id*. at 57. Then, the trial court made the following sentencing statement:

THE COURT: * * * * * What you did to this poor woman is disgusting, and it exceeds all bounds of humanity. It was brutal.

It was vicious. You tortured this woman for no reason and for extended periods of time. [Y]ou barricaded the doors to the house, keeping the victim from leaving, and you had set a countdown indicating you would kill her at a certain point in time. And then you'd move that time a little further . . . all the while tormenting her, where she was led to believe that at any moment . . . you would end her life.

As a result of that incident - and this was the first incident – she . . . had to undergo surgery[.] * * * * * And on that occasion, after she begged and pleaded, you finally let her leave the house only after she would shower and clean up. Then you took her [ ] to the hospital, but then ran right out and took her car and fled. You didn't want to get caught. * * * * *

And the second offense, . . . you beat her through the evening hours and into the morning. You were punching her, kicking her, pulling her hair, dragging her by the hair. At one point, she was on the bed, and you tied her hands and feet together just so that you could continue to beat her. You used objects to beat her, including a broom handle and a candlestick. And you made statements that you wanted to bash her skull in. That does not sound like the statements I heard here today of any regret or remorse you're expressing. I'm looking at what you did to this woman then. On that occasion, she was not sure if she lost consciousness, but she just remembered trying to keep breathing, trying to keep breathing just to stay alive. At one point, you stood on her elbow and jerked it out backwards, and her arm just snapped and was bending the wrong way.

One of the most horrific things I read in the police report . . . . [D.M.] specifically remembered you telling her, "I may go to jail for a little bit, but you'll be ugly forever because of me." It's awfully hard for this Court to find any truth in the fact that you're expressing remorse today . . . .

You know, attorneys often say in here that in arguing against a maximum or an aggravated sentence, that the Court should just reserve the maximum or most of a maximum sentence for the worst of the worst. In this Court's eyes, Mr. Vazquez, you've hit that mark. This is one of the worst of the worst domestic violence cases I have seen . . . . [ ]

On the aggravating factors, I find that you do have a criminal history, the one felony, that case which, for the record, was the sexual assault - no, you were convicted of obstructing a court order. It was a fourth-degree felony in Camden County, New Jersey in 1992. You were sentenced to serve 180 days in Camden County jail and three years on probation. The overall seriousness of this offense, which I think I've already described and has been described by others, is certainly an aggravator both cases - in both cases. The fact that this victim suffered unimaginable injuries well and beyond what's necessary to establish the elements of this offense, the overall brutality of these offenses. The fact that you fled and attempted to avoid prosecution or accountability for these offenses is an aggravator. Again, you were more worried about what might happen to you instead of the broken, beaten, bleeding woman that you left.

You violated a no-contact order by trying to reach out to her, again for your own selfish reasons, which is to rekindle or establish some kind of contact with her, never once thinking about the impact that might have on her, never once thinking about the authority of this Court and the rule that you were not to have any contact with her. The repetitive nature of this offense and the fact that you committed it once and then six months later you came back and did it just as brutal[ly] and severe[ly] as you did it the first time.

*Id*. at 61-63.

[14]     Finding that the "aggravators outweigh the mitigators and that an aggravated sentence is justified in this case," the trial court issued the following sentence: in Cause 79D02-1710-F3-23, for aggravated battery, a Level 3 felony, fifteen years; and for auto theft, a Level 6 felony, two years, with the sentences ordered to be served consecutively; in Cause 79D02-1802-F3-5, for aggravated battery, a Level 3 felony, fifteen years; and for domestic battery with a deadly weapon, a Level 5 felony, six years, to be served concurrently with the fifteen-year sentence for aggravated battery. The court ordered the fifteen-year and seventeen-year sentences to be fully executed and served consecutively, for an aggregate sentence of thirty-two years in the Department of Correction. Santiago-Vazquez now appeals.

## Analysis

### I.     *Double Jeopardy*

[15]     First, Santiago-Vazquez argues that his convictions in Cause 79D02-1802-F3-5 for aggravated battery, a Level 3 felony, and domestic battery with a deadly weapon, Level 5 felony, run afoul of Indiana's prohibition against double jeopardy. Specifically, he argues that "his dual convictions violate the double jeopardy 'actual evidence test[,]'" and that "there was but one battery, at one time, inflicted upon one victim. Thus, only one crime was committed." Appellant's Br. p. 24. The State counters that Santiago-Vazquez waived his double jeopardy claim by pleading guilty.

[16] We first address the question of whether Santiago-Vazquez waived his right to assert his double jeopardy claims because he pleaded guilty. In general, a defendant who pleads guilty pursuant to an agreement with the State waives the right to raise a double jeopardy claim on appeal. *Mapp v. State*, 770 N.E.2d 332, 334 (Ind. 2001). We have repeatedly held, however, that when a defendant pleads guilty without a plea agreement, the defendant may raise a double jeopardy claim because he or she did not receive the benefit of a bargain with the State. *See Kunberger v. State*, 46 N.E.3d 966 (Ind. Ct. App. 2015); *Wharton v. State*, 42 N.E.3d 539 (Ind. Ct. App. 2015); *Graham v. State*, 903 N.E.2d 538 (Ind. Ct. App. 2009); *McElroy v. State*, 864 N.E.2d 392 (Ind. Ct. App. 2007), *trans. denied*.

[17] Here, Santiago-Vazquez entered into a plea agreement and received a significant tangible benefit when the State dismissed the remaining pending charges against him in exchange for his guilty plea. Moreover, defense counsel explicitly stated, at sentencing, that no double jeopardy issue would attach regarding the entry of judgments for both aggravated battery, a Level 3 felony, and domestic battery with a deadly weapon, a Level 5 felony. We agree with the State that this issue is waived.

## II. *Abuse of Sentencing Discretion*

[18] Sentencing decisions rest within the sound discretion of the trial court. *McElfresh v. State*, 51 N.E.3d 103, 107 (Ind. 2016). As long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id*. An abuse of discretion will be found where the decision is clearly against

the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

[19] A trial court may abuse its discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* (citing *Anglemyer v. State*, 868 N.E.2d 482, 490-91 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218 (Ind. 2007)).

### *1. Improper Aggravating Factors*

[20] Santiago-Vazquez argues that the trial court abused its sentencing discretion by identifying improper aggravating factors.[3] A single aggravating circumstance may support the imposition of an enhanced sentence. *McNew v. State,* 822 N.E.2d 1078, 1082 (Ind. Ct. App. 2005). If a trial court abuses its discretion by improperly considering an aggravating circumstance, we need to remand for resentencing only "if we cannot say with confidence that the trial court would

---

[3] Here the trial court found the following aggravating circumstances: (1) Santiago-Vasquez's criminal history; (2) the "overall seriousness of th[e] offense" and "that this victim suffered unimaginable injuries well and beyond what's necessary to establish the elements of this offense, the overall brutality of these offenses"; (3) that Santiago-Vasquez fled "and attempted to avoid prosecution or accountability"; (4) that Santiago-Vasquez violated a no-contact order; and (5) "[t]he repetitive nature of this offense and the fact that you committed it once and then six months later [he] came back and did it just as brutal and severe as [he] did it the first time." Tr. Vol. II p. 63.

have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Anglemyer*, 868 N.E.2d at 491.

## A. Criminal History

[21] Santiago-Vazquez argues that the trial court "committed an [a]buse of [d]iscretion in finding a significant aggravating criminal history" where the pre-sentence investigation report: (1) shows that he has no juvenile criminal history; (2) "refer[s] in 1992 to Sexual Assault and Obstructing a Court Order"; however, Santiago-Vazquez alleges he "was not convicted of Sexual Assault – but was convicted of Obstructing a Court Order"; and (3) "demonstrates an arrest in Puerto Rico in November of 2011 for conjugal abuse"; however, "[n]o disposition was available" and "there was no factual support to demonstrate the nature of the charges[.]" Appellant's Br. p. 15.

[22] It is well-settled that it is proper for a trial court to consider a criminal history to be an aggravating circumstance. *See* Ind. Code § 35-38-1-7.1(a)(2) (a defendant's history of criminal or delinquent behavior is an appropriate aggravating circumstance). Our review of the record reveals that, in imposing the sentence, the trial court acknowledged that Santiago-Vazquez has a prior felony conviction in New Jersey for violating a court order, for which Santiago-Vazquez served six months of jail time and three years of probation. His prior felony conviction is evidence that Santiago-Vazquez has a history of criminal delinquent behavior, upon which a trial court may properly rely to justify a sentence greater than the advisory sentence. *See Gomilia v. State*, 13 N.E.3d 846, 853 (Ind. 2014). The trial court did not abuse its sentencing discretion in

identifying Santiago-Vazquez's prior criminal history as an aggravating circumstance.

## B. Material Elements of the Crimes

[23] Santiago-Vazquez also argues that "[t]he next three[4] aggravating circumstances cited by the court seemed to be little more than a re-hash of the charged offenses" and contends that the "[t]rial [c]ourt's reason for imposing a sentence greater than the advisory sentence includes material elements of the offense" and, therefore, those aggravating circumstances are "improper as a matter of law." Appellant's Br. p. 16.

[24] "[A] material element of a crime may not be used as an aggravating factor to support an enhanced sentence." *McElroy v. State*, 865 N.E.2d 584, 589 (Ind. 2007). In evaluating the nature of the offense, however, the trial court "may properly consider the particularized circumstances of the factual elements as aggravating factors." *McCarthy v. State*, 749 N.E.2d 528, 539 (Ind. 2001). Such is the case here.

[25] In the trial court's words, during Santiago-Vazquez's "brutal" attacks on D.M., he "tortured [her] for no reason and for extended periods of time"; he "set a countdown [and] indicated [he] would kill her at a certain point in time . . . then [he would] move that time . . . all the while tormenting her, where she was

---

[4] The next three aggravating circumstances identified by the trial court were the "overall seriousness of th[e] offense" and "that this victim suffered unimaginable injuries well and beyond what's necessary to establish the elements of this offense, [and] the overall brutality of these offenses". Tr. Vol. II p. 63.

led to believe that any moment in time [he] would end her life." Tr. Vol. II p. 61. As the trial court further recounted:

> One of the most horrific things [the trial court] read in the police report regarding the first incident, [D.M.] reported waking up on the ground after choking only because [Santiago-Vazquez] w[as] kicking her to wake up. And she specifically remembered [Santiago-Vazquez] telling her, "I may go to jail for a little bit, but you'll be ugly forever because of me."

*Id*. at 62.

[26] These particularized circumstances go beyond the material elements needed to establish that Santiago-Vazquez committed aggravated battery. Stated differently, Santiago-Vazquez's conduct would have satisfied the statutory elements of the crimes without his offenses being as nearly brutal. Thus, we conclude that the trial court did not rely on the elements of the offenses but, rather, on the particularized facts of the crimes when it considered the brutality of Santiago-Vazquez's crimes. Accordingly, the trial court did not abuse its discretion when it identified, as aggravating circumstances, the "overall seriousness of th[e] offense"; "that [D.M.] suffered unimaginable injuries well and beyond what's necessary to establish the elements of this offense, [and] the overall brutality of these offenses[.]" *See id.* at 63.

### C. Repeated Offense Aggravator

[27] Without citation to authority, Santiago-Vazquez also challenges as improper, the trial court's finding that he committed "similar acts of brutality against the

same victim [ ] within six months of each other"; because, he argues, "the Court should not enhance a sentence based on an additional charge for which a sentence is imposed." Appellant's Br. p. 17. We disagree, in light of the fact that other valid aggravating circumstances exist to support the enhancement of Santiago-Vazquez's sentence. *See McNew,* 822 N.E.2d at 1082. Moreover, we have previously found that the serial nature of offenses committed against a victim may be a valid aggravating circumstance. *See Stout v. State*, 834 N.E.2d 707, 711 (Ind. Ct. App. 2005), *trans. denied*.

### D. Violation of No Contact Order

[28] Lastly, Santiago-Vazquez asserts that he "does not dispute that violation of a no contact order is an aggravating circumstance pursuant to Ind. Code 35-38-1-7.1(5)"; however, he certainly implies that the trial court abused its discretion in finding, as aggravating, that he "contacted the victim while he was incarcerated," in violation of a no-contact order, because "the contact did not involve any threatening communications." Appellant's Br. p. 17.

[29] We disagree and direct Santiago-Vazquez's attention to the testimony of domestic violence expert, Caryn Burton of the Indiana Coalition Against Domestic Violence, at his sentencing hearing regarding the impact of Santiago-Vazquez's letter and enclosed necklace. Burton testified that Santiago-Vazquez's act of mailing the necklace to D.M. after, as reported by D.M., he used the necklace to strangle D.M. during the February 2018 incident "could be taken as a direct threat, or could at least be perceived" as such by a domestic violence victim. Tr. Vol. II p. 49.

### III. *Consecutive Sentences*

[30] Next, Santiago-Vazquez argues that the trial court abused its sentencing discretion by imposing consecutive sentences. It is within the trial court's discretion to impose consecutive sentences, but the trial court must find at least one aggravating factor before imposing consecutive sentences. *Owens v. State,* 916 N.E.2d 913, 917 (Ind. Ct. App. 2009). We may review both the written and oral sentencing statements in order to identify the findings of the trial court. *McElroy v. State,* 865 N.E.2d 584, 589 (Ind. 2007); *see McBride v. State*, 992 N.E.2d 912, 919-20 (Ind. Ct. App. 2013) (holding that we will affirm an order of consecutive sentences if it is supported by a statement of the trial court's reasoning and at least one aggravating circumstance), *trans. denied.*

[31] Here, the trial court made a detailed sentencing statement in which it identified various aggravating circumstances that we have deemed valid in the above discussion. The aggravating circumstances identified by the trial court amply support its imposition of consecutive sentences, and we find no abuse of the trial court's discretion.

### IV. *Inappropriateness of Sentence*

[32] Lastly, we turn to Santiago-Vazquez's claim that his sentences are inappropriate. Indiana Appellate Rule 7(B) provides that this court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden to

persuade this court that his or her sentence is inappropriate. *Wilson v. State,* 966 N.E.2d 1259, 1266 (Ind. Ct. App. 2012) (citing *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind. 2006)), *trans. denied.*

[33] In Indiana, trial courts can tailor an appropriate sentence to the circumstances presented; the trial court's judgment receives "considerable deference." *Sanders v. State,* 71 N.E.3d 839, 844 (Ind. 2017) (quoting *Cardwell v. State,* 895 N.E.2d 1219, 1222 (Ind. 2008)). In conducting our review, we do not look to see whether the defendant's sentence is appropriate or "if another sentence might be *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *Sanders,* 71 N.E.3d at 844 (citing *King v. State,* 894 N.E.2d 265, 268 (Ind. Ct. App. 2008)). When determining whether a sentence is inappropriate, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Childress*, 848 N.E.2d at 1081.

[34] Here, Santiago-Vazquez was convicted in separate causes of two counts of aggravated battery, Level 3 felonies; one count of auto theft, a Level 6 felony; and one count of domestic battery by means of a deadly weapon, a Level 5 felony. The sentencing range for a Level 3 felony is three to sixteen years, with an advisory sentence of nine years. I.C. § 35-50-2-5(b). The trial court imposed fifteen-year sentences on each of Santiago-Vazquez's convictions for aggravated battery, Level 3 felonies. The sentencing range for a Level 6 felony is six months to two-and-one-half years, with an advisory sentence of one year. *See* I.C. § 35-50-2-7. The trial court sentenced Santiago-Vazquez to two years for

auto theft, a Level 6 felony. Additionally, the sentencing range for a Level 5 felony is one to six years, with an advisory sentence of three years. *See* I.C. § 35-50-2-6. Here, the trial court sentenced Santiago-Vazquez to six years for domestic battery by means of a deadly weapon, a Level 5 felony. The trial court, thus, imposed sentences in excess of the advisory sentence on each conviction; however, the court imposed less than the statutory maximum on three of Santiago-Vazquez's four convictions. Had the trial court imposed the statutory maximum sentences on all counts, Santiago-Vazquez faced a maximum aggregate sentence of forty and one-half years; here, he received an aggregate sentence of thirty-two years.

[35]　Regarding the nature of the offenses, the August 2017 and February 2018 attacks each spanned multiple days, during which time Santiago-Vazquez "tortured" and brutalized D.M. with his fists, a broom handle, and a metal candle stand. Tr. Vol. II p. 61. According to the record, the August 2017 incident occurred because "D.M. returned home . . . [and] indicated [she] was tired and wanted to rest." App. Vol. II p. 34. The February 2018 incident occurred after D.M. returned home from walking her dog, purportedly because Santiago-Vazquez did not want her to leave her house. As a result of the beatings, D.M. required reconstructive surgery including a metal plate in her face and suffered permanent disfigurement. D.M. also suffered orbital blowout fractures, a broken nose, broken ribs, a broken orbital socket, facial fractures, a dislocated elbow, a broken bone in her neck, collapsed teeth, a fractured jaw, sinus impaction, and nerve damage. After the August 2017 incident, Santiago-

Vazquez took D.M. to the hospital, and fearing arrest, drove away from the hospital in D.M.'s vehicle without her permission.

[36]    As to Santiago-Vazquez's character, the record reveals that, after the August 2017 attack, Santiago-Vazquez fled in D.M.'s car, without her permission, and traveled home to Puerto Rico, likely to evade impending arrest.  Only when Hurricane Maria displaced him, did he return to Indiana, resume living with D.M., and repay D.M.'s generosity in allowing him to reside with her with the February 2018 attack.  The fact that, within six months of the horrific August 2017 attack, Santiago-Vazquez could not refrain from waging another brutal attack on D.M., gives us insight into his character.  *See Stout*, 834 N.E.2d at 711 (a finding of serial offenses against a victim constitutes a valid aggravating circumstance).  We glean even further insight into Santiago-Vazquez's fathomless cruelty from his sending D.M. the offending necklace and his remarks to D.M., after the August 2017 incident, that: "I may go to jail for a little bit, but you'll be ugly forever because of me."  Tr. Vol. II p. 62.

[37]    As we have noted, Santiago-Vazquez did not receive a maximum sentence here.  Given the trial court's explicit finding that Santiago-Vazquez's offenses and character are "the worst of the worst," we would not have deemed its imposition of maximum and consecutive sentences—as the State requested—to be inappropriate on appellate review.  *See* Tr. Vol II p. 57 (The State requested "a fully executed sentence on each and every count and each and every case" and that "all counts [should] be run consecutively and both cases [should] run consecutively.").

From the trial court's sentencing statement, we surmise that the trial court afforded significant mitigating weight to Santiago-Vazquez's mitigating entry of a guilty plea, which "spared [D.M.] having to come to court . . . and having to go to trial." *Id*. at 64. Santiago-Vazquez should regard highly the trial court's extension of grace, given that we, too, regard the instant offenses as being "among the very worst offenses" and regard him as "among the very worst offenders, thus justifying the maximum sentence." *See Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct. App. 2002), *trans. denied*; s*ee Buchanan v. State,* 767 N.E.2d 967, 974 (Ind. 2002) (holding that in general, the maximum possible sentences should be reserved for the worst offenders and offenses). Here, we are constrained to find that Santiago-Vazquez's thirty-two-year sentence is not inappropriate.

## Conclusion

Santiago-Vazquez waived his double jeopardy claim because he entered a guilty plea. The trial court did not abuse its sentencing discretion in identifying aggravating circumstances or by its imposition of consecutive sentences. Nor is Santiago-Vazquez's sentence inappropriate in light of the nature of his offenses and his character. We affirm.

Affirmed.

Crone, J., and Bradford, J., concur.