# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 27 2019, 5:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

T. Andrew Perkins
Rochester, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| William Michael Stinemetz,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | February 27, 2019<br><br>Court of Appeals Case No.<br>18A-CR-1673<br><br>Appeal from the Fulton Circuit Court<br><br>The Honorable A. Christopher Lee, Judge.<br><br>Trial Court Cause No.<br>25C01-1511-MR-569 |

**Tavitas, Judge.**

# Case Summary

William Michael Stinemetz appeals his ninety-three-year sentence for murder; robbery, a Class C felony; and armed robbery, a Class B felony. We affirm.

# Issues

Stinemetz raises three issues, which we consolidate and restate as follows:

> I. Whether the trial court abused its sentencing discretion when identifying aggravating and mitigating circumstances.
>
> II. Whether Stinemetz's ninety-three-year sentence is inappropriate in light of the nature of his offense and his character.

# Facts

Before noon on September 26, 1997, Stinemetz killed Lawrence Pfeifer in Kewanna, Indiana, and stole Pfeifer's car. Pfeifer was a sixty-nine-year-old semi-retired farmhand. Pfeifer was mentally-handicapped and kept to himself; he lived in a trailer that was located within minutes of the Indiana Lawrence Bank ("the bank"). Pfeifer drove a maroon Chevy Corsica pickup truck.

Around noon, a witness saw Pfeifer's maroon truck leave Pfeifer's trailer. Also around that time, town superintendent, Michael Molitor, drove past Pfeifer's trailer and observed "that a car was parked underneath a tree next to the trailer, and it just – it stuck out. It didn't look right." Tr. Vol. III p. 207. The car was a "bluish" Chevy car, and Molitor thought Pfeifer owned a truck. *Id*. at 208.

After killing Pfeifer, Stinemetz—armed with a pistol—drove from Pfeifer's trailer to the bank. Stinemetz pointed a pistol at a bank teller and at bank patron, Tom Mitchell, and "took their money." Tr. Vol. V p. 202. The bank teller pressed a panic button and activated the bank's camera, which captured black and white images of the robbery, including the robber's attire—a Chicago Cubs baseball cap and a striped jacket. After the robbery, Mitchell and the bank teller saw a maroon Chevrolet Corsica, which Mitchell recognized as Pfeifer's truck, turn onto Tamarack Road and drive in the direction of Pfeifer's trailer.

When Pfeifer uncharacteristically did not appear for work, his employer, Larry Friedrich, went to Pfeifer's residence. Friedrich found Pfeifer dead and drove to Kewanna, where he encountered the police at the bank. Friedrich reported Pfeifer's death, and Kewanna's then-town marshal, Tom Hickle,[1] and a deputy drove to Pfeifer's house. En route, Marshal Hickle observed and retrieved a pile of discarded clothing that was lying in the road. The items included a Chicago Cubs baseball cap and striped jacket. Police were unable to solve Pfeifer's murder or apprehend the bank robber at the time.

In 2010, detectives successfully extracted a DNA profile from the baseball cap and jacket; and in 2015, a DNA database identified Stinemetz as the source of

---

[1] For approximately two-and-one-half years, beginning in 1985 or 1986, Stinemetz served as Kewanna's town marshal. Stinemetz was Hickle's immediate predecessor. Stinemetz's role ended in, what he termed, a "mutual parting." Tr. Vol. V. pp. 29, 71.

the DNA. Investigators traveled to Florida, obtained a buccal swap from Stinemetz, and confirmed the match.

[8] On November 3, 2015, the State charged Stinemetz with murder; robbery resulting in serious bodily injury, a Class A felony; and armed robbery, a Class B felony. The State arrested Stinemetz in Florida on or about December 3, 2015.[2] Stinemetz was tried by jury on April 30, 2018. During its case-in-chief, the State's witnesses testified to the foregoing facts. The State also presented the security camera photographs and introduced expert testimony that the pistol that the robber held in the photographs was consistent with the type of gun that killed Pfeifer.

[9] Stinemetz testified in his defense and denied ever knowing or killing Pfeifer; he also denied "[e]ver" owning a handgun or a 40-caliber weapon or owning the Chicago Cubs baseball cap and striped jacket worn by the bank robber. Tr. Vol. V p. 48. Stinemetz testified further that he owned a "light blue" Chevy Lumina at the time of the robbery.[3] *Id.* at 54. On May 4, 2018, the jury found Stinemetz guilty on all counts.

[10] At Stinemetz's sentencing hearing on June 19, 2018, Pfeifer's family members testified that they had been haunted by the unsolved crime for nearly two

---

[2] In 2006, Stinemetz moved to Stuart, Florida.

[3] As we have stated above, a blue Chevy was parked outside Pfeifer's trailer around the time of the robbery, and Pfeifer's truck was used in the robbery. At trial, Stinemetz's ex-wife testified that a court awarded Stinemetz's blue Chevy Lumina to her in 1999 divorce proceedings.

decades. The trial court acknowledged Stinemetz's prior criminal history, which included convictions for patronizing a prostitute; operating a motor vehicle while intoxicated (twice); and no-contest pleas in Florida to "felony charges of dealing in stolen property and giving false ownership ID information to a secondhand dealer and uttering a forged bill." *Id*. at 200.

In determining Stinemetz's sentence, the trial court found, as mitigating circumstances, that Stinemetz had generally maintained employment; served in the National Guard; and sought to address his alcoholism. The trial court found Stinemetz's prior criminal history and the fact that Stinemetz served as a law enforcement officer in Kewanna "in the mid-1980s" and later committed murder, robbery, and armed robbery in Kewanna to be aggravating circumstances. *Id*. at 201-02. The trial court also found the nature of the offense to be an aggravating circumstance and stated:

> It's the nature of Lawrence Pfeifer's murder that I find most troubling about your situation. Very disturbing. You shot him in the head and killed him to take his car for a short period of time to commit another violent crime and that would be armed robbery of Indiana Lawrence Bank. You coldly cut short Mr. Pfeiffer's [sic] life as if it meant nothing and in furtherance of your immediate needs, and that was to secure -- I think a get-away car is the wrong term -- I think like a disguised car. You didn't want them to see you robbing the bank in your car. That's what it boiled down to. It just strikes me as senseless. * * * * * Instead, you tossed him aside like a piece of trash.
>
> Mr. Pfeifer was an older guy, 69 years of age. The evidence at trial was he was semi-retired, lived on this farm for all his life. He struck me, as I was hearing the testimony, every town has --

he struck me as kind of one of the characters in any small town that you usually have, and he struck me as that guy; quiet and reclusive. And it struck me that all he really wanted to do was, you know, work a little less hard than he had all those years and, you know, live out his life alone. I mean this guy just wanted to live out his retirement and be left alone. He was shot in his head in his own bedroom by you. It's a cold -- and, you know, really, I think that the victim's sister probably expressed it better than I can, it was a cold, calculated nature with which you murdered Mr. Pfeifer. That's particularly aggravating here. It was an act of pure evil. You stole his car, went to Indiana Lawrence Bank, a man in his prime with a big gun, shoved your gun in a woman teller's face, pointed it at one of the patrons, took their money, and left, fled and eluded justice for decades. Think about that; Mr. Pfeifer, who doesn't have any retirement, dead in the ground, and you're out living free for a couple of decades almost.

It bothers me and shows me things about your character that you did this in the town that you were sworn to protect earlier. I think that's an aggravating factor; however, you want to put a label on it, it shows poorly as to your character. You were there for a while. I'm assuming you knew the kind of fear that would have been in with the community for this sort of event. Your crimes deserve aggravated sentences and consecutive sentencing. I would note that it appears that you have been generally employed, you did serve in the National Guard. I commend you for your addressing your substance abuse issues. I give little weight to these factors. . . .[T]he aggravating factors here[ ] greatly overwhelm any positive pieces of your past.

*Id*. at 202-03.

[12] The trial court, for reasons of double jeopardy, reduced Count II, robbery resulting in serious bodily injury, a Class A felony, to robbery, a Class C felony. The trial court imposed sentence as follows and ordered the sentences to be

served consecutively: Count I, murder, sixty-five years; Count II, robbery, a Class C felony, eight years; and Count III, armed robbery, a Class B felony, twenty years. Stinemetz was, thus, sentenced to an aggregate sentence of ninety-three years in the Department of Correction; he now appeals.

## Analysis

### *A. Sentencing Discretion*

[13] Stinemetz argues that the trial court abused its sentencing discretion in identifying aggravating circumstances and mitigating circumstances. Sentencing decisions rest within the sound discretion of the trial court. *McElfresh v. State*, 51 N.E.3d 103, 107 (Ind. 2016). As long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* An abuse of discretion will be found where the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

[14] A trial court may abuse its discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* (citing *Anglemyer v. State*, 868 N.E.2d 482, 490-91 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218 (Ind. 2007)). If a trial court abuses its discretion by improperly considering an aggravating circumstance,

we need to remand for resentencing only "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Anglemyer,* 868 N.E.2d at 491. A trial court's sentencing order may not be challenged as reflecting an improper weighing of aggravating or mitigating circumstances. *Id.*

[15] First, Stinemetz contends that the trial court abused its discretion when it identified his prior criminal history and the nature of his offense as aggravating circumstances before imposing sentence. Specifically, he argues, "While [Stinemetz's] moderate criminal history was a legitimate aggravating factor, it was not a violent history. The nature of the offenses was not unusually cruel or vicious for the crimes charged." Appellant's Br. p. 11.

[16] Inasmuch as Stinemetz concedes that his criminal history was a "legitimate aggravating factor" – and we agree – we need not address it further. *See* Ind. Code § 35-38-1-7.1(a)(2) (a defendant's history of criminal or delinquent behavior is an appropriate aggravating circumstance). As to Stinemetz's contention that "the nature of the offenses [is] not unusually cruel or vicious for the crimes charged," it is well-settled that "when evaluating the nature of the offense, 'the trial court may properly consider the particularized circumstances of the factual elements as aggravating factors.'" Appellant's Br. p. 11; *McCarthy v. State*, 749 N.E.2d 528, 539 (Ind. 2001). Such is the case here.

[17] Here, the trial court aptly described the "cold, calculated" and "disturbing" manner in which Stinemetz shot and killed sixty-nine-year-old Pfeifer for

Pfeifer's car; drove Pfeifer's car to the bank to ensure against being identified by Stinemetz's own vehicle; robbed the bank and a patron at gunpoint; and fled. The trial court did not abuse its discretion when it identified Stinemetz's criminal history and the nature of his offense as aggravating circumstances before imposing sentence.[4]

[18] Stinemetz also argues that the trial court abused its discretion in failing to identify his history of employment and "willingness to address his alcohol dependency" as significant mitigating circumstances. Appellant's Br. p. 11. A trial court is not obligated to accept a defendant's claim as to what constitutes a mitigating circumstance. *Rascoe v. State*, 736 N.E.2d 246, 249 (Ind. 2000). A trial court has discretion to determine whether the factors are mitigating, and it is not required to explain why it does not find the defendant's proffered factors to be mitigating. *Haddock v. State*, 800 N.E.2d 242, 245 (Ind. Ct. App. 2003). A claim that the trial court failed to find a mitigating circumstance requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493. As noted above, a trial court's sentencing order may not be challenged as reflecting an improper weighing of aggravating or mitigating circumstances. *Id*. at 491.

---

[4] Having found that the trial court here identified two proper aggravating circumstances in determining Stinemetz's sentence, we do not reach Stinemetz's claim that the trial court abused its discretion in imposing consecutive sentences. *See Frentz v. State,* 875 N.E.2d 453, 470 (Ind. Ct. App. 2007) (A consecutive sentence must be supported by at least one aggravating circumstance.), *trans. denied.* The trial court's imposition of consecutive sentences is not clearly against the logic and effect of the facts and circumstances before the trial court.

[19]     Like the trial court, we fail to find significance here in either Stinemetz's employment status during his years as a fugitive or his efforts to manage his substance abuse. The trial court deemed both factors mitigating, but did not deem them significantly so. To the extent that Stinemetz is asking us to afford these mitigating circumstances more weight, we cannot. *See Anglemyer,* 868 N.E.2d at 491 (holding that "the relative weight or value assignable to" aggravating or mitigating circumstances that were either found or overlooked is not subject to review for abuse). The trial court did not abuse its discretion in concluding that Stinemetz's history of employment and efforts to address his alcoholism were not significantly mitigating.

### B. Inappropriateness of Sentence

[20]     Lastly, Stinemetz argues that his sentence is inappropriate in light of the nature of his offense and his character. Indiana Appellate Rule 7(B) provides that this court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden to persuade this court that his or her sentence is inappropriate. *Wilson v. State,* 966 N.E.2d 1259, 1266 (Ind. Ct. App. 2012) (citing *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind. 2006)), *trans. denied.*

[21]     In Indiana, trial courts can tailor an appropriate sentence to the circumstances presented; the trial court's judgment receives "considerable deference." *Sanders v. State,* 71 N.E.3d 839, 844 (Ind. 2017) (quoting *Cardwell v. State,* 895 N.E.2d 1219, 1222 (Ind. 2008)). In conducting our review, we do not look to see

whether the defendant's sentence is appropriate or "if another sentence might be *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *Sanders,* 71 N.E.3d at 844 (citing *King v. State,* 894 N.E.2d 265, 268 (Ind. Ct. App. 2008)).

[22] When determining whether a sentence is inappropriate, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Childress*, 848 N.E.2d at 1081. Under the statutory scheme that was in effect when Stinemetz committed these crimes in 1997, the sentencing range for murder was "a fixed term of between forty-five (45) and sixty-five (65) years, with the advisory sentence being fifty-five (55) years." Ind. Code § 35-50-2-3 (1997). Here, the trial court imposed a sixty-five-year sentence for Stinemetz's murder conviction. The sentencing range for a Class C felony was "a fixed term of between two (2) and eight (8) years, with the advisory sentence being four (4) years." I.C. § 35-50-2-6 (1997). Here, the trial court imposed an eight-year sentence for Stinemetz's conviction for robbery, a Class C felony. The sentencing range for a Class B felony was "a fixed term of between six (6) and twenty (20) years, with the advisory sentence being ten (10) years." I.C. § 35-50-2-5 (1997). Here, the trial court imposed a twenty-year sentence on Stinemetz's conviction for armed robbery, a Class B felony. Thus, Stinemetz received an aggregate sentence of ninety-three years.

[23] We agree with the State that nothing about this offense or Stinemetz's character suggests that the maximum, aggregate sentence was inappropriate here. As to the nature of Stinemetz's offense, Stinemetz targeted Pfeifer, a sixty-nine-year-

old man, shot him in the head in his home for his car, and killed him. Stinemetz drove Pfeifer's car to the bank, pointed a pistol at bank staff and patrons, robbed them, and fled in Pfeifer's car.

[24] Regarding Stinemetz's character, several aspects of the instant offenses reflect exceedingly poorly and give us insight into his character: (1) the callousness with which he killed the elderly Pfeifer; (2) that, years earlier, Stinemetz was a law enforcement officer in Kewanna, the same community that he "terrorized" by "commit[ing] these violent acts"; (3) Stinemetz's prior criminal history[5]; and (4) that, after robbing and murdering Pfeifer and committing armed robbery of the bank, Stinemetz eluded justice for eighteen years and enjoyed a moderately comfortable existence. *See* Tr. Vol. II p. 201. We cannot say that Stinemetz's maximum sentence is inappropriate.

## Conclusion

[25] The trial court did not abuse its sentencing discretion. Stinemetz's sentence is not inappropriate in light of the nature of his offense and his character. We affirm.

[26] Affirmed.

---

[5] Stinemetz has prior convictions for the following offenses: hiring a prostitute (1994); operating a motor vehicle while intoxicated (2001, 2002), and pleaded no contest in Florida to felony charges of dealing in stolen property and giving false ownership ID information to a secondhand dealer, second-degree felonies, and uttering a forged bill, a third-degree felony. At the time of his sentencing, he was facing new charges stemming from a December 1997 armed robbery, a Class B felony, that he allegedly committed in Miami County soon after the instant offenses.

Baker, J., and May, J., concur.